UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RICHARD ASLIN, KETURAH BIXBY,
JESSICA CANTLON, BENJAMIN HAYDEN,
SARAH HEILBRONNER, CELESTE KIDD,
BRADFORD MAHON, ELISSA NEWPORT
and STEVEN PIANTADOSI,

                                        Plaintiffs,

vs.                                                                    **Civil Case No.: 6:17-cv-06847-DGL**

UNIVERSITY OF ROCHESTER,
JOEL SELIGMAN, and ROBERT CLARK,

                                        Defendants.

_____


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT, TO STRIKE CERTAIN ALLEGATIONS AND
TO REQUIRE PLAINTIFFS TO RE-PLEAD IN ACCORDANCE WITH RULES 8 AND 10**


**WARD GREENBERG HELLER & REIDY LLP**
1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700

*Attorneys for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iv

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .................................................................................................................... 2

POINT I: PLAINTIFFS HAVE FAILED TO PLEAD ANY VIABLE RETALIATION CLAIMS ................ 2

   A.   Criticism of Plaintiffs by UR Is Not a Material Adverse Employment Action ............ 4

   B.   Allegedly Violating Plaintiffs' Confidentiality Is Not a Material Adverse Employment Action ................................................................................... 5

   C.   Viewing Emails of the Plaintiffs Is Not a Material Adverse Employment Action ....... 6

   D.   Calling for the Independent Investigation Is Not a Material Adverse Employment Action ................................................................................... 6

   E.   Permitting Jaeger to Participate in Kidd's and Piantadosi's Performance Evaluations Is Not a Material Adverse Employment Action ......................................... 6

   F.   Failure to Retain Hayden as a UR Employee Is Not a Material Adverse Employment Action ............................................................................ 7

   G.   "Sabotaging" Plaintiffs' Efforts To Move To RIT Is Not a Material Adverse Employment Action ........................................................................... 8

   H.   Plaintiffs' Exclusion From Meetings Is Not a Material Adverse Employment Action ................................................................................ 8

   I.   Deciding Not To Hire Heilbronner in BCS Is Not a Material Adverse Employment Action ................................................................................ 8

   J.   Plaintiffs' Claims of Retaliation Must Be Dismissed for the Independent Reason That They Fail to Allege a Change to Their Current or Future Prospective Employment ............................................................................ 9

   K.   Newport's Retaliation Claim Must Be Dismissed For Other Additional Reasons ..... 11

POINT II: PLAINTIFFS AIDING AND ABETTING CLAIMS SHOULD BE DISMISSED (COUNTS XV, XVI) ................................................................................... 13

POINT III: CANTLON AND KIDD DO NOT STATE HOSTILE WORK ENVIRONMENT CLAIMS (COUNTS X, XI) ..................................................................................... 15

   A.   Cantlon ........................................................................................... 16

   B.   Kidd ................................................................................................ 19

POINT IV: BIXBY'S TITLE IX HOSTILE EDUCATION ENVIRONMENT CLAIM SIMILARLY IS DEFICIENT AND MUST BE DISMISSED (COUNT XII) .............................................. 20

POINT V: ASLIN AND HAYDEN FAIL TO STATE A LEGALLY COGNIZABLE BREACH OF
CONTRACT CLAIM (COUNTS II AND IX) ............................................................ 23

POINT VI: PLAINTIFFS HAVE FAILED TO STATE A CLAIM OF DEFAMATION *PER SE*
(COUNT XIV)........................................................................................................ 25

    A.   **Five of the Six Alleged Statements Contain No Defamatory Statement of Fact** ........ 26

    B.   **Three of Statements Alleged Are Not "Of and Concerning" Plaintiffs** ...................... 27

    C.   **Three of the Statements Are Privileged, and Therefore Are Not Actionable** .............. 28

    D.   **Plaintiffs Have Failed to Plead Defamation *Per Se*** ......................................... 29

POINT VII: THE COURT SHOULD STRIKE PLAINTIFFS' IMMATERIAL ALLEGATIONS AND
REQUIRE PLAINTIFFS TO RE-PLEAD IN ACCORDANCE WITH THE FEDERAL RULES................. 31

    A.   **The Court Should Strike Plaintiffs' Immaterial, Impertinent, and Scandalous
Allegations**........................................................................................................ 31

    B.   **Plaintiffs' Selective and Unauthorized Use of Pseudonyms is Improper** ...................... 33

    C.   **Plaintiffs Should Be Required to Re-Plead in Compliance with Rules 8 and 10** .......... 34

CONCLUSION ............................................................................................................ 35

<u>TABLE OF AUTHORITIES</u>

**Cases**

*AB v. Rhinebeck Cent. Sch. Dist.*, 224 F.R.D. 144 (S.D.N.Y. 2004) ................................................ 3

*Abreu v Suffolk County Police Dept.*, 2007 U.S. Dist. LEXIS 12695
   (E.D.N.Y. Feb. 23, 2007) ........................................................................................... 11

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155
   (S.D.N.Y. 2009) ........................................................................................................ 24

*Albert v. Loksen*, 239 F.3d 256 (2d Cir. 2001) .......................................................................... 26

*Ananiadis v. Mediterranean Gyros Prods., Inc.*, 151 A.D.3d 915 (2d Dep't 2017)...................... 3

*Anderson v. Davis Polk & Wardwell, LLP*, 850 F. Supp. 2d 392 (S.D.N.Y. 2012) .............. 31, 32

*Aronson v. Wiersma*, 65 N.Y.2d 592(1985)........................................................................... 26, 30

*Atkinson v. Mobil Oil Corp.*, 205 A.D.2d 719 (2d Dep't 1994) ................................................... 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................... 4, 21

*Bickerstaff v. Vassar College*, 354 F.Supp.2d 276 (S.D.N.Y. 2004)................................ 4, 5, 6, 7

*Bowles v. New York City Trans. Auth.*, 2006 U.S. Dist. LEXIS 32914
   (S.D.N.Y. May 23, 2006) ........................................................................................... 6

*Burgos v. Southeast Works*, 2017 U.S. Dist. LEXIS 84915 (W.D.N.Y. May 31, 2017)............. 16

*Campanella v. County of Monroe*, 853 F. Supp. 2d 364 (W.D.N.Y. 2012) ......................... 28, 29

*Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163 (2d Cir. 2000).................................... 26, 27

*Chandok v. Klessig*, 632 F.3d 803 (2d Cir. 2011)..................................................................... 28

*Chicherchia v. Cleary*, 207 A.D.2d 855 (2d Dep't 1994)........................................................... 28

*Cody v. Cty. of Nassau*, 577 F.Supp. 2d 623 (E.D.N.Y. 2008), *affd.*,
   345 F. Appx. 717 (2d Cir. 2009) ........................................................................ 4, 5, 6, 7

*Cruz v. Coach Stores, Inc.*, 202 F.3d 560 (2d Cir. 2000) .......................................................... 16

*Dale v. Chicago Tribune Co.*, 797 F.2d 458 (7th Cir. 1986).......................................................... 8

*Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*, 2003 U.S. Dist. LEXIS 18772
   (S.D.N.Y. Oct. 17, 2013).......................................................................................... 30

*Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999)..................................................... 20

*Davis v. Verizon Wireless*, 389 F. Supp. 2d 458 (W.D.N.Y. 2005).................................... 3, 7, 10

*DeWitt v. Lieberman*, 48 F. Supp. 2d. 280 (S.D.N.Y. 1999) ..................................................... 13

*Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499 (S.D.N.Y. 2016)................. 18, 19

*Eaton v. Wayne Cent. Sch. Dist.*, 25 F.Supp. 3d 370 (W.D.N.Y. 2014)................................ 4, 7, 9

*Elgamil v. Syracuse Univ.*, 2000 U.S. Dist. LEXIS 12598 (N.D.N.Y. Aug. 21, 2000)............... 21

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162
   (S.D.N.Y. 2011) ........................................................................................................ 24

*Employees Cox v. Onondaga County Sheriff's Dep't*, 760 F.3d 139 (2d Cir. 2014) ..................... 6

*Evanoff v. New York State*, 2013 U.S. Dist. LEXIS 167315 (W.D.N.Y. Nov. 25, 2013)............. 5

*Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167 (W.D.N.Y. 2003) ............................. 27

*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712 (2d Cir. 2010) ........................... 14

*Fleming v. MaxMara USA, Inc.*, 371 Fed. Appx. 115 (2d Cir. 2010) .......................................... 17

*Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295 (2004) .......................................... 3

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) .......................................... 21

*Giarrizzo v. Holder*, 2011 U.S. Dist. LEXIS 120739 (N.D.N.Y. 2011).................................. 9, 12

*Giordano-Forkan v. N.Y.C. Dep't of Educ.*, 2014 U.S. Dist. LEXIS 153977
(S.D.N.Y. Oct. 17, 2014)................................................................................................ 3

*Golub v. Empire/Star Group, Inc.*, 89 N.Y.2d 1074 (1997) ...................................................... 26

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993) .......................................................... 15, 20

*Hayut v. State Univ. of N.Y.*, 352 F.3d 733 (2d Cir. 2003) ...................................................... 20

*Hill v. Nicholson*, 383 Fed. Appx. 503 (6th Cir. 2010).......................................................... 17

*Holtz v. Rockefeller & Co.*, 258 F.3d 62 (2d Cir. 2001) .......................................................... 18

*Irrera v. Humpherys*, 695 F. App'x 626 (2d Cir. 2017) .......................................................... 22

*Jamison v. Chapman,* 2009 U.S. Dist. LEXIS 104059 (N.D.N.Y. Nov. 9, 2009)....................... 17

*Keady v. Nike, Inc.*, 116 F. Supp. 2d 428 (S.D.N.Y. 2000) ...................................................... 25

*Kforce, Inc. v. Alden Personnel, Inc.*, 288 F. Supp. 513 (S.D.N.Y 2003)..................................... 30

*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006)....................................................... 27

*Liberman v. Gelstein*, 80 N.Y.2d 429 (1992)................................................................. 28, 30

*Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015)........................................................ 19

*Lueck v. Progressive Ins.*, 2009 U.S. Dist. LEXIS 96492 (W.D.N.Y. 2009) .................................. 4

*Maldonado v. George Weston Bakeries*, 441 Fed. Appx. 808 (2d Cir. 2011)............................... 15

*Mann v. Abel*, 10 N.Y.3d 271 (2008) ...................................................................................... 29

*Marcus v. Barilla Am. NY, Inc.,* 14 F. Supp. 3d 108 (W.D.N.Y. 2014) .................... 15, 16, 18, 19

*Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451 (S.D.N.Y. 2014)................................. 23, 24

*Matthews v. Corning Inc.*, 77 F. Supp. 3d 275 (W.D.N.Y. 2014) ........................................... 3, 7, 8

*McCullough v. Xerox Corp.*, 942 F. Supp. 2d 380 (W.D.N.Y. 2013) ................................. passim

*McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70 (2d Cir. 2010)............................................. 18, 19

*Murphy v. Neuberger*, 1996 U.S. Dist. LEXIS 11164 (S.D.N.Y. Aug. 5, 1996) ......................... 24

*Murray v. New York Univ. College of Dentistry*, 57 F.3d 243 (2d Cir. 1995)......................... 3, 24

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S 101 (2002) .................................................... 18

*Oncole v. Sundowner Offshore Srvs., Inc.*, 523 U.S. 75 (1998) ................................................ 15

*Papelino v. Albany Col. of Pharm. Of Union Univ.*, 633 F.3d 81 (2d Cir. 2010) ................. 20, 22

*Patel v. Lutheran Med. Ctr.*, 753 F. Supp. 1070 (E.D.N.Y. 1990) ............................................. 10

*Petrosino v. Bell Atl.*, 385 F.3d 210 (2d Cir. 2004) ................................................................. 16

*Politico v. Promus Hotels, Inc.*, 184 F.R.D. 232 (E.D.N.Y. 1999)............................................. 34

*Popat v. Levy*, 253 F. Supp. 3d 527 (W.D.N.Y 2017) .............................................................. 13

*Rivera v. Orange County*, 2013 U.S. Dist. LEXIS 30847 (S.D.N.Y. Mar. 5, 2013) ..................... 8

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11 (2d Cir. 2014)........................... 16

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) ...................................................................... 11

*Rochester-Genesee Reg'l Transp. Auth. v. Cummins, Inc.*, 2010 U.S. Dist. LEXIS 75805
(W.D.N.Y. July 28, 2010) ..................................................................................... 23, 24

*Rodas v. Town of Farmington*, 918 F. Supp. 2d 183 (W.D.N.Y. 2013) .......................................... 3

*Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d. 98 (2d Cir. 2011)............................ 13

*Sales v. Clark*, 2017 U.S. Dist. LEXIS 16631 (S.D.N.Y. Feb. 3, 2017)....................................... 13

*Scaria v. Rubin*, 117 F.3d 652 (2d Cir. 1997)............................................................................... 8

*Sirohi v. Trustees of Columbia Univ.*, 1998 U.S. App. LEXIS 22519
   (2d Cir. April 16, 1998);................................................................................................... 23

*Sud v. Sud*, 211 A.D.2d 423 (1st Dep't 1995)............................................................................. 23

*Tagliaferri v. Szulik*, 2016 U.S. Dist. LEXIS 68732 (S.D.N.Y. May 25, 2016) ............................ 30

*Thai v. Cayre Group, Ltd.*, 726 F. Supp. 2d 323 (S.D.N.Y. 2010)............................................... 27

*Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143 (E.D.N.Y. 2014) ........................................... 29

*Ulrich v. Moody's Corp.*, 2014 U.S. Dist. LEXIS 145898 (S.D.N.Y. March 31, 2014)............. 26

*Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708 (2d Cir. 1996)................................... 18, 19

*Wanamaker v. Columbian Rope Co.*, 108 F.3d 462 (2d Cir. 1997)............................................. 12

*Washington v. County of Rockland*, 373 F.3d 310 (2d Cir. 2004)............................................... 18

*Whipple v. Reed Eye Assocs.*, 213 F. Supp. 3d 492 (W.D.N.Y 2016) ............................ 13, 15, 26

*Zucco v. Auto Zone, Inc.*, 800 F. Supp. 2d 473 (W.D.N.Y. 2011)................................................ 15

## Rules

Fed. R. Civ. P. 10(b) ................................................................................................................... 35

Fed. R. Civ. P. 12(f) .................................................................................................................... 31

Fed. R. Civ. P. 5.2 ....................................................................................................................... 34

Fed. R. Civ. P. 8(a)(2) ................................................................................................................. 34

Local R. Civ. P. 5.3 ..................................................................................................................... 34

## Treatises

2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.37(3) (3d ed. 2010) ............... 31

5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1281 (1969) ..................................... 34

### PRELIMINARY STATEMENT

This Complaint furthers plaintiffs' very public attempts to villainize the University of Rochester (UR) following two separate internal investigations involving allegations against Dr. Florian Jaeger, a faculty member in the Brain and Cognitive Sciences Department (BCS). Although no longer actionable, the Complaint focuses in large part on Jaeger and his alleged conduct. While plaintiffs are purposely vague as to when this alleged conduct occurred, a careful review of the Complaint reveals indirectly what plaintiffs fail to acknowledge directly – that much of Jaeger's objectionable conduct ceased by 2011.

In 2016, two of the plaintiffs initiated an internal complaint about Jaeger, largely related to his pre-2011 behavior. Following two separate investigations and appeals, Plaintiffs ultimately drafted a voluminous EEOC complaint and immediately released this complaint publicly, thus beginning a systematic, rhetorical media campaign apparently designed in part to obfuscate weaknesses in their claims. Following the receipt of this complaint, UR initiated an outside independent investigation into the allegations in that complaint.

Plaintiffs ultimately obtained right to sue letters, and now assert seventeen causes of action claiming that UR retaliated against them for raising their complaints about Jaeger, subjected three plaintiffs to a hostile work or educational environment, defamed them, and in two instances, breached their tenure "contracts."[1] Although plaintiffs filed a 538-paragraph, 192-page Complaint, virtually every one of the counts asserted rests on some combination of the same allegedly retaliatory actions taken by UR. Plaintiffs' seventeen asserted counts against the defendants, however, ultimately fail to state even one legally cognizable claim. On a motion to dismiss, the

---

[1] In addition to UR, plaintiffs named as defendants the former President of UR, Joel Seligman (in causes of action for defamation and aiding and abetting retaliation), and the Provost of UR, Rob Clark (in the cause of action for aiding and abetting retaliation).

Court must accept plaintiffs' allegations as true. Yet even when viewed through this lens, the acts alleged to have been taken by UR do not meet the threshold requirement of a materially adverse employment action, and thus, all eleven counts asserting retaliation and aiding and abetting retaliation must fail. The balance of plaintiffs' claims repackage the inadequate allegations of retaliation as claims for hostile work environment, breach of contract and defamation, and likewise are facially deficient.

In addition to the pervasive substantive deficiencies that plague each of their purported causes of action, plaintiffs' Complaint runs afoul of the Federal Rules in numerous respects. Plaintiffs improperly lace their Complaint with gratuitous, salacious allegations regarding issues that have absolutely no bearing on the causes of action asserted and for which their only purpose is to attack and embarrass the defendants. Further, their prolixity makes it next to impossible for the defendants to craft a meaningful responsive pleading. As demonstrated below, the Court should grant defendants' motion pursuant to Rule 12(b)(6) and dismiss the Complaint in its entirety. In the event any portion of the Complaint survives this motion, the Court should strike plaintiffs' immaterial, impertinent, and scandalous allegations, and require plaintiffs to re-plead in accordance with Federal Rules 8 and 10.

<u>**ARGUMENT**</u>

**POINT I**
**PLAINTIFFS HAVE FAILED TO PLEAD ANY VIABLE RETALIATION CLAIMS**
**(COUNTS I, III, IV, V, VI, VII, VIII, X, XIII)**

A *prima facie* case of retaliation consists of: (1) participation in a protected activity; (2) knowledge by the defendant of that participation;[2] (3) a materially adverse employment action;

---

[2] Defendants' argument assumes, for purposes of this motion only, that plaintiffs sufficiently plead that they engaged in protected activity and that UR had knowledge of that participation.

and (4) a causal connection between the protected activity and the adverse employment action.

Not every adverse employment action constitutes retaliation; the events alleged must amount to a

*material* adverse employment action. Examples of retaliatory adverse actions include termination

from employment, a demotion evidenced by a decrease in salary, a less distinguished title,

significantly diminished material responsibilities or a material loss of benefits, or actions that could

"dissuade a reasonable worker from making or supporting a charge of discrimination." *Matthews

v. Corning Inc.*, 77 F. Supp. 3d 275, 297 (W.D.N.Y. 2014) (*quoting Giordano-Forkan v. N.Y.C.

Dep't of Educ.*, 2014 U.S. Dist. LEXIS 153977 at *6-7 (S.D.N.Y. Oct. 17, 2014) (citations omitted)

(citing cases and identifying "personality conflicts," snubbing, supervisor comments, exclusion

from meetings, and isolation at work as non-actionable harms)); *Rodas v. Town of Farmington*,

918 F. Supp. 2d 183, 191 (W.D.N.Y. 2013); *McCullough v. Xerox Corp.*, 942 F. Supp. 2d 380,

387 (W.D.N.Y 2013); *see Davis v. Verizon Wireless*, 389 F. Supp. 2d 458, 478-79 (W.D.N.Y.

2005).

All of the plaintiffs except Bixby assert counts of retaliation against the defendants. In

doing so, these plaintiffs (collectively, "retaliation plaintiffs") allege many of the same or similar

actions of UR personnel as the grounds for their individual causes of action for retaliation. As set

forth below, every such action cited by plaintiffs as retaliatory fails to rise to the level of material

adverse employment actions required to support a claim for retaliation. Thus, these causes of

action, asserted under Title VII, Title IX and the NYSHRL,[3] must be dismissed because the

---

[3] Courts apply the same framework for retaliation claims brought pursuant to Title VII, Title IX and the NYSHRL. *See AB v. Rhinebeck Cent. Sch. Dist.*, 224 F.R.D. 144, 153 (S.D.N.Y. 2004) (*citing Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 248 (2d Cir. 1995)) (Title IX); *Ananiadis v. Mediterranean Gyros Prods., Inc.*, 151 A.D.3d 915, 919 (2d Dep't 2017) (citing *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 313 (2004)) (NYSHRL). Accordingly, plaintiffs' retaliation claims pursuant to these statutes are addressed collectively.

retaliation plaintiffs fail to allege the essential elements of this claim and thus fail to "plead facts sufficient to state a claim for relief that is plausible on its face." *Eaton v. Wayne Cent. Sch. Dist.*, 25 F. Supp. 3d 370, 373 (W.D.N.Y. 2014) (*quoting Lueck v. Progressive Ins.*, 2009 U.S. Dist. LEXIS 96492, at *4 (W.D.N.Y. 2009)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A.      Criticism of Plaintiffs by UR Is Not a Material Adverse Employment Action

The criticism of an employee is not a materially adverse employment action, even if the criticism is based on "false[]" or erroneous facts or is otherwise unjustified. *See Cody v. Cty. of Nassau*, 577 F.Supp. 2d 623, 645-46 (E.D.N.Y. 2008), *affd.*, 345 F. Appx. 717 (2d Cir. 2009). Likewise, negative or otherwise insulting statements "are hardly even actions, let alone 'adverse actions.'" *Bickerstaff v. Vassar College*, 354 F.Supp.2d 276, 280 (S.D.N.Y. 2004); *Vasquez v. Southside United Hous. Dev. Fund Corp.*, 2009 U.S. Dist. LEXIS 74480, at *38 (E.D.N.Y. Aug. 21, 2009).

In some form or other, every retaliation plaintiff cites to certain actions taken by UR which amount to nothing other than criticisms of plaintiffs. For example, Aslin, Cantlon, Kidd and Piantadosi point to a July 26, 2016 memo written by Deans Lennie and Culver, which they claim portrays the complaints against Jaeger as rumors and gossip. Compl. at ¶¶ 382(a), 402(b), 410(e), 418(a). All retaliation plaintiffs except Heilbronner claim that Seligman told department heads the complaints raised by plaintiffs were hearsay and that plaintiffs overreacted. *Id.* at ¶¶ 382(j), 396(c), 402(n), 410(k), 418(j), 426(j), 433(i). This same group of plaintiffs points to statements by DeAngelis at a January 2017 faculty meeting where he announced that some faculty had been bullying Jaeger and that he had a stack of private emails proving that certain faculty had spread rumors, deceived and manipulated people. Although there is no claim that any of these plaintiffs were referenced by name, they allege that all department faculty knew that they were the

individuals to whom DeAngelis referred. *Id.* at ¶¶ 382(c), 396(a), 402(d), 410(h), 418(d), 426(b), 433(b). As another example, all plaintiffs except Hayden and Heilbronner claim that UR created and maintained the narrative that in their public engagement of protected activity, plaintiffs violated confidentiality. *Id.* at ¶¶ 382(f), 396(b), 402(e), 410(j), 418(e), 426(c).

These and other similar actions alleged by plaintiffs amount to criticism of their conduct.[4] They do not support a cause of action for retaliation, and to the extent that plaintiffs' claims are based on such allegations, they should be dismissed. *See Cody,* 577 F.Supp. 2d at 645-46; *Bickerstaff,* 354 F.Supp.2d at 280.

**B.    Allegedly Violating Plaintiffs' Confidentiality Is Not a Material Adverse Employment Action**

Kidd claims that her confidentiality was violated during and after the initial internal investigation conducted by UR. *See* Compl. ¶ 410 (a, b, c, d, i). She appears to allege that this breach of confidentiality constitutes an adverse employment action by UR. *Id.* Likewise, notwithstanding the fact that Canton's and Aslin's initial complaints alleged that Jaeger's conduct affected others (like Kidd) but not them, Canton and Aslin allege that by allowing Kidd to view the report from that initial investigation, UR breached their confidentiality. *Id.* at ¶¶ 382(g), 402(a).

This so-called "breach" of confidentiality did not constitute a material adverse action, and cannot support a claim of retaliation. *See Evanoff v. New York State*, 2013 U.S. Dist. LEXIS 167315, at *8-9 (W.D.N.Y. Nov. 25, 2013) (employee's discussion of plaintiff's internal complaint was not actionable retaliation because "having confidential information revealed to other

---

[4] Many other allegations by plaintiffs in support of their respective retaliation claims similarly amount only to non-actionable criticism by UR. For Aslin, *see* Compl. ¶ 382 (b, d, e, h, i, k); for Newport, *see id.* at ¶ 396 (a, b, c); for Cantlon, *see id.* at ¶ 402 (c, f, g, j, l, m, o); for Kidd, *see id.* at ¶ 410 (f, g, k, o, q); for Piantadosi, *see id.* at ¶ 418 (b, i, j, k); for Mahon, *see id.* at ¶ 426 (a, e, j, k); for Hayden, *see id.* at ¶ 433 (a, g, j); for Heilbronner, *see id.* at ¶ 448 (g).

employees" does not "rise to the level of adverse employment actions) (*citing Bowles v. New York City Trans. Auth.*, 2006 U.S. Dist. LEXIS 32914, at *43 (S.D.N.Y. May 23, 2006)).

## C.    Viewing Emails of the Plaintiffs Is Not a Material Adverse Employment Action

All plaintiffs except Heilbronner allege that DeAngelis had a stack of private emails (Compl. ¶¶ 382(c), 396(a), 402(d), 410(h), 418(d), 426 (b), 433(b)), and that the searching of these accounts amounted to an adverse employment action. Plaintiffs, however, fatally undercut this claim by their own admission that UR policy actually permitted such searches. *Id.* at ¶¶ 308 n.46, 341. Searching of the emails therefore cannot be a material adverse employment action.

## D.    Calling for the Independent Investigation Is Not a Material Adverse Employment Action

The retaliation plaintiffs (except Heilbronner) uniformly claim that UR retaliated against them by retaining a law firm to conduct an investigation that required their participation, knowing they could not participate due to their lawsuit, and framing their inability to participate as a "failure of cooperation." *Id.* at ¶¶ 382(l, m), 396(e, f), 402(p, q), 410(r, s), 418(l, m), 426 (l, m), 433(k, l). An employer's decision to conduct an investigation into allegations of discrimination is not in and of itself retaliatory. *See Employees Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139, 146-147 (2d Cir. 2014). Plaintiffs fail to plausibly allege how their decision not to participate in the independent investigation of their own allegations altered the terms and conditions of their employment. At most, their claim that UR "framed" this as a lack of cooperation is no more than alleged criticism, which of course is not a retaliatory action. *See Cody,* 577 F. Supp. 2d at 645-46; *Bickerstaff,* 354 F. Supp. 2d at 280. These facts cannot form the basis of a retaliation claim.

## E.    Permitting Jaeger to Participate in Kidd's and Piantadosi's Performance Evaluations Is Not a Material Adverse Employment Action

Kidd and Piantadosi claim that the fact that Jaeger participated in their respective performance reviews was retaliatory. Compl. ¶¶ 410(l), 418(c). These allegations fail to identify anything adverse that occurred as a result of Jaeger's participation, let alone anything materially adverse that could support a claim for retaliation. *See Matthews,* 77 F. Supp. 3d at 297; *Davis,* 389 F. Supp. 2d at 478-79. Even if, as plaintiffs allege, Jaeger supported a comment made by *another* faculty member criticizing Kidd's publications as all collaborative, which "detracted from her independence as a researcher," and the other faculty member's comment was then included in her review (Compl. ¶ 287), the comment is nothing more than criticism, and is not a materially adverse employment action. *See Cody,* 577 F. Supp. 2d at 645-46; *Bickerstaff,* 354 F. Supp.2d at 280.

## F.     Failure to Retain Hayden as a UR Employee Is Not a Material Adverse Employment Action

Cantlon, Kidd, Piantadosi, Mahon and Hayden all claim that making Hayden a "derisory offer" to retain him after he already obtained a new position at the University of Minnesota (Minnesota) was an adverse employment action, because UR knew this "would hurt" these plaintiffs' research, and would damage the reputation of BCS, and even of UR. Compl. ¶¶ 402(i), 410(n), 418(f), 426(d), 433(e). To argue that UR purposely acted to damage its own reputation defies logic and is the sort of speculation that cannot rise to the level of a material adverse employment action without some plausible allegation of harm. *See, e.g., Eaton,* 25 F. Supp. 3d at 373 ("Factual allegations must be enough to raise a right to relief above the speculative level."). It is not a meritorious claim to say, as plaintiffs apparently do, that they are entitled to dictate to UR the faculty members UR must hire or retain, or that Title VII provides them with a cause of action if that individual refuses UR's retention offer. UR's alleged failure to increase Hayden's remuneration so that he would agree to reject Minnesota's offer of employment also is not a materially adverse employment action.

G.    **"Sabotaging" Plaintiffs' Efforts To Move To RIT Is Not a Material Adverse Employment Action**

Cantlon, Kidd, Piantadosi, Mahon, Hayden and Heilbronner allege that UR "sabotog[ed]" their planned move" to RIT. Compl. ¶¶ 402(k), 410(p), 418(g), 426(f), 433(f). These six plaintiffs allege that they sought to establish a new, competing, center at another local university. *Id.* at ¶ 335. UR's alleged failure to subsidize this venture by promising that this group of six could utilize UR equipment at the same rates charged to UR researchers is not retaliatory. Again plaintiffs appear to argue that Title VII authorizes them to dictate not only the terms of their employment at UR, but the terms of their employment with a different prospective employer. These facts cannot form the basis of a retaliation claim. *See Scaria v. Rubin*, 117 F.3d 652, 655 (2d Cir. 1997) (*quoting Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir. 1986) ("This Court does not sit as a super-personnel department that reexamines an entity's business decisions")).

H.    **Plaintiffs' Exclusion from Meetings Is Not a Material Adverse Employment Action**

Cantlon, Kidd, Piantadosi and Mahon all allege that UR retaliated against them by excluding them from the meetings at which there was discussion of whether to hire Heilbronner. Compl. ¶¶ 402(h), 410(m), 418(h), 426(d, g). Exclusion from meetings simply is not a materially adverse employment action. *See Matthews*, 77 F. Supp. 3d at 297; *McCullough*, 942 F. Supp. 2d at 387; *Rivera v. Orange Cty.*, 2013 U.S. Dist. LEXIS 30847, at *25-26 (S.D.N.Y. Mar. 5, 2013).

I.    **Deciding Not To Hire Heilbronner in BCS Is Not a Material Adverse Employment Action**

Hayden and Heilbronner both allege that UR's decision not to hire Heilbronner (Hayden's wife) in BCS after the conclusion of her post-doctorate fellowship constitutes retaliation against them. Compl. ¶¶ 433(d), 448 (a-f, h). Importantly, plaintiffs admit that Heilbronner was offered a

job at UR in the Neuroscience Department, but that in May of 2017, while she was considering this position, she and Hayden decided to leave UR. *Id.* at ¶ 329(i). The offer of a job to Heilbronner which perhaps was not her first choice, is not a material adverse employment action.

Moreover, plaintiffs' factual allegations concerning the hiring process are, at best, speculative and conclusory. *See id.* at ¶ 325 (claiming, without factual support, that the hiring committee "was designed to include only faculty members who supported Jaeger rather than include even one of his critics"). In fact, the allegations in the Complaint wholly contradict Heilbronner's claim that she was not hired based on retaliation – as noted above, plaintiffs acknowledge that at least five BCS faculty members found her "below threshold." *See id.* These retaliation claims are speculative and conjectural, and are insufficient to survive a motion to dismiss.[5] *See, e.g., Eaton*, 25 F. Supp. 3d at 373.[6]

**J.      Plaintiffs' Claims of Retaliation Must Be Dismissed For the Independent Reason That They Fail To Allege a Change To Their Current or Future Prospective Employment**

A general statement that a plaintiff's reputation has been harmed, without more, does not demonstrate the requisite damage to present employment status or the ability to seek future employment. *See Giarrizzo v. Holder*, 2011 U.S. Dist. LEXIS 120739, at *17 (N.D.N.Y. 2011) ("harm that plaintiff allegedly suffered, 'prejudice in the eyes of the Court' is wholly conclusory and insufficient" to state retaliation claim).

---

[5] Hayden asserts in his list of alleged retaliatory actions a conclusory allegation that he was constructively discharged due to the environment at UR. Compl. ¶ 433(h). Hayden frames this same allegation as a breach of contract claim in Count IX. As set forth in Point V, dressed up either way, this claim has no merit.

[6] Points I(A)-I(I) above cover every retaliation action raised by plaintiffs in their respective counts. As noted in each individual point, none of the so-called retaliatory actions pled by plaintiffs constitutes a material adverse employment action and thus, the causes of action for retaliation must be dismissed.

Not one of the plaintiffs has alleged damage to his or her present employment or future prospects to support their claims of reputational damage. In fact, the statements set forth in the Complaint belie such contentions. For example, Cantlon's allegations of reputational damage are discredited by her well-publicized acceptance in December 2018 of a position at Carnegie Melon University, an institution arguably similar in stature and reputation to UR.[7] Hayden's alleged reputational damages are contradicted by his concession that he secured a position at Minnesota during the time the allegedly retaliatory actions were occurring. Compl. ¶ 433(e).[8] Hayden's contention that UR retaliated against him, after he had secured another job, by failing to make an acceptable offer to remain at UR (*id*.) fails to describe anything adverse concerning Hayden's employment situation. His dissatisfaction with UR's retention offer *after* he accepted a new position at another university is not actionable. Similarly, Kidd, Mahon, and Piantadosi provide no evidence to support how any of the purported retaliatory conduct impacted the terms and conditions of their employment.[9] Heilbronner, despite her claims of retaliation, is a member of the faculty at Minnesota as well. For these reasons, the plaintiffs' retaliation claims should be dismissed. *See, e.g., Davis*, 389 F. Supp. 2d at 478-79*; Patel v. Lutheran Med. Ctr.*, 753 F. Supp. 1070, 1074-75 (E.D.N.Y. 1990).[10]

---

[7] As with the other plaintiffs, Cantlon's alleged reputational damage is contradicted as well by her own pleading, in which she outlines her career achievements. *See* Compl. ¶ 58.

[8] *See also* Compl. ¶ 62 (describing Hayden's reputation).

[9] *See* Compl. ¶¶ 59 (detailing Kidd's past and current achievements), 60 (Mahon's career and accolades), 61 (Piantadosi's academic reputation).

[10] Notably, plaintiffs do not allege that UR's purported conduct dissuaded them from making or continuing to make complaints. In fact, plaintiffs affirmatively plead that it did not. *See* Compl. ¶¶ 381, 402, 409, 416, 424, 431, where plaintiffs allege that since March 2016 they have "continuously engaged" in an interconnected set of protected activities in opposition to the unlawful and discriminatory practices at UR, including the filing a complaint with the EEOC. *See Matthews*, 77 F. Supp. 3d at 298.

**K.      Newport's Retaliation Claim Must Be Dismissed For Other, Additional Reasons**

Newport was employed by UR from 1988 until 2012, when she retired and accepted a faculty position at another university. Compl. ¶ 393. She alleges that approximately four years after leaving UR, she began "collaborating with her [former] colleagues about how to ensure that Jaeger's misconduct was properly investigated. . ." *Id.* at ¶¶ 393-94, 495-497. As a result of inserting herself into this matter, she contends UR retaliated against her by "harming [her] professional reputation and status in BCS and the greater academic community." *Id.* at ¶ 396. Newport's retaliation claim fails for several reasons in addition to those discussed above.

It is true that Title VII's anti-retaliation provisions can protect former employees who engaged in protected activity. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997); *Abreu v Suffolk Cty. Police Dept.*, 2007 U.S. Dist. LEXIS 12695, at *31 (E.D.N.Y. Feb. 23, 2007). As the *Robinson* Court made clear, interpreting the statutory term "employee" to include former employees ensures that "the threat of postemployment retaliation [will not] deter victims of discrimination from complaining to the EEOC" and prevents the creation of a "perverse incentive for employers to fire employees who might bring Title VII claims." 519 U.S. at 346.

At the time Newport allegedly began engaging in protected activity, she had not been employed by UR for over four years. (Notably, despite being Chair of BCS in 2007-2011, when much of the alleged misbehavior by Jaeger occurred, she did not investigate Jaeger and does not now allege that she was engaged in "protected activity" related to Jaeger while employed by UR.) She is no different than any third party who elects to interject herself into another workplace. Title VII may protect her against retaliation by her new employer, but defendants can find no support for the proposition that, for the purposes of Title VII, Newport remains an "employee" of UR in perpetuity.

Second, as a separate ground for dismissal, her claim of retaliation cannot stand because she has not shown that UR's alleged actions had any impact on her current employment or future employment prospects. In the post-employment retaliation context, Title VII protects individuals from actions injurious to their subsequent employment or to their ability to secure future employment. *See Wanamaker v. Columbian Rope Co*., 108 F.3d 462, 466 (2d Cir. 1997).

> A plaintiff may be able to state a claim for retaliation, even though he is no longer employed by the defendant company, if, for example the company 'blacklists' the former employee, wrongfully refuses to write a recommendation to prospective employers, or sullies the plaintiff's reputation" through actions such as [p]oor recommendations, refusals to furnish recommendations, or threats to future employers . . . .

*Giarrizzo*, 2011 U.S. Dist. LEXIS 120739, at *15 (granting motion to dismiss where plaintiff resigned from position years prior to filing action and did not allege that former employer's action had any impact on his current employment situation or efforts to find a new job, or that defendant hindered in any way prospective employment) (internal citations omitted); Newport alleges that she has been and remains employed at another institution, serving "in many important roles" and conducting "globally recognized" research. Compl. ¶ 57.[11] Nowhere in the Complaint does Newport allege that she has sought, and has been denied employment elsewhere because of UR's retaliatory actions. [12]

---

[11] In this paragraph, Newport contradicts her own allegations of reputational harm by expounding on her impressive credentials.

[12] The same holds true as a separate basis on which to dismiss Aslin's retaliation claims. Almost all of Aslin's retaliation allegations relate to actions taken by UR after he voluntarily resigned his employment. Compl. ¶¶ 382(c)-(m), 383. Aslin has not specifically alleged that UR's actions have had a negative impact on his ability to procure further employment, because he resigned from UR after he had already engaged a new position.

**POINT II**

**PLAINTIFFS AIDING AND ABETTING CLAIMS SHOULD BE DISMISSED (COUNTS XV, XVI)** [13]

A claim for aiding and abetting against an individual under the NYSHRL is predicated on the liability of the employer itself. *Sales v. Clark*, 2017 U.S. Dist. LEXIS 16631, at *24 n.5 (S.D.N.Y. Feb. 3, 2017); *DeWitt v. Lieberman*, 48 F. Supp. 2d. 280, 293 (S.D.N.Y. 1999). None of the plaintiffs have stated a valid retaliation claim (*see* Point I, *supra*), and thus none can state a claim against Seligman and Clark for aiding and abetting retaliation under the NYSHRL. These claims must be dismissed.

Moreover, even if the Court finds for purposes of this motion that plaintiffs have plausibly alleged some materially adverse employment actions by UR, to state a claim against Seligman and Clark under NYSHRL's aiding and abetting provision, plaintiffs must allege that they actually participated in conduct giving rise to a retaliation claim. *See Popat v. Levy*, 253 F. Supp. 3d 527, 540 (W.D.N.Y 2017) (*quoting Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011)); *Whipple v. Reed Eye Assocs.*, 213 F. Supp. 3d 492 (W.D.N.Y 2016).

As discussed above, alleging that Seligman made statements regarding the sufficiency of the case against Jaeger and comparing the EEOC complaint to a *Rolling Stone* article do not constitute retaliation, and neither does allegedly authorizing general searches of emails, without any allegations that Seligman actually directed or was aware of searches of plaintiffs' e-mails or even that plaintiffs were subject to searches because of protected activity. And, of course, plaintiffs admit any search was permitted by UR policy. *See* Compl. ¶ 118 n.46. Plaintiffs likewise claim that a November 29, 2016 letter sent by Clark was retaliatory, because this letter "praised Jaeger

---

[13] Though not named in the heading for these causes of action, Heilbronner is listed as one of the plaintiffs asserting this claim in paragraphs 533 and 536 of the Complaint. It is unclear whether this is a typographical error, since none of the alleged retaliatory actions by Seligman or Clark appear to be directed at Heilbronner.

and characterized complaints against him as 'rumors' and 'misinformation.'" *Id.* at ¶ 382(b); *see also id.* at ¶¶ 402(c), 410(g), 418(b), 426(a), 433(a). Criticism simply is not a materially adverse employment action. *See* Point I(A), *supra*.

Likewise, plaintiffs allege that both Seligman and Clark created environments that allowed complaints to be "swept under the rug," and that they ignored plaintiffs when they "attempted to convey their concerns." Compl. ¶¶ 535 (a, b), 538(a, c). Plaintiffs are in essence claiming that Seligman and Clark created an environment where their complaints were not taken seriously. Yet plaintiffs make no effort to tie these conclusory allegations to any protected activity apart from their complaints about Jaeger. The failure to investigate an alleged complaint, without more, does not amount to retaliation. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721-22 (2d Cir. 2010) (finding no retaliation where the alleged retaliation was the "disposition . . . of the same complaint that allegedly provoked the retaliatory response").

Finally, plaintiffs' conclusory allegations that Seligman and Clark somehow "permitted and/or instructed the UR administration" to either fail to retain some of the plaintiffs or to encourage their departure are entirely unsupported. For example, with respect to the claim that Seligman and Clark made no efforts to retain them, plaintiffs allege only that some of them were told "the decision to force out the troublesome Plaintiffs came from the top-meaning Seligman and Clark." Compl. ¶ 40. This paragraph directs the reader to paragraphs much later in the Complaint for "more detail" to support this conclusory assertion. But those paragraphs make absolutely no mention of Seligman or Clark, either directly or indirectly. *See id.* at ¶¶ 329, 333. At most, plaintiffs allege that "some people in the administration thought the best way to solve the problem was for the Plaintiffs to leave Rochester." *Id.* at ¶ 333. But these general conclusions, devoid of any facts tying any conduct to Seligman and Clark, fail to satisfy the applicable pleadings standards, and

fail to state a claim for aiding and abetting retaliation. *See Whipple*, 213 F. Supp 3d at 496.

## POINT III
### CANTLON AND KIDD DO NOT STATE HOSTILE WORK ENVIRONMENT CLAIMS (COUNTS X,[14] XI)

In addition to their claims of retaliation, Cantlon and Kidd allege that the purported discrimination and harassment to which they were subjected created a hostile work environment under Title VII and the NYSHRL. Yet, the allegations upon which they rely to support this cause of action fail on their face to show that their workplace was "permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Marcus v. Barilla Am. NY, Inc.,* 14 F. Supp. 3d 108, 112 (W.D.N.Y. 2014) (*quoting Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)); *Zucco v. Auto Zone, Inc.,* 800 F. Supp. 2d 473, 476 (W.D.N.Y. 2011). Further, as they must to support a claim for gender-based harassment, plaintiffs cannot demonstrate "that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination . . . because of sex." *Marcus,* 14 F. Supp. 3d at 112 (*quoting Oncole v. Sundowner Offshore Srvs., Inc.*, 523 U.S. 75, 81 (1998)). As a result, their causes of action for hostile work environment must be dismissed. *Id.* (*citing Maldonado v. George Weston Bakeries*, 441 Fed. Appx. 808, 809 (2d Cir. 2011)); *see McCollough,* 942 F. Supp. 2d at 386.

When adjudicating a hostile work environment claim, courts consider the totality of the circumstances, such as the frequency and severity of the conduct, whether it was physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the employee's job performance. *Marcus,* 14 F. Supp. 3d at 112-13. A plaintiff must show

---

[14] The Complaint lists two causes of actions enumerated as Court X. The count discussed in this section is the second Count X listed.

that either a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the work environment conditions. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000). "The analysis has objective and subjective elements: the misconduct shown must be severe or persuasive enough to create an objectively hostile or abusive work environment, and the [plaintiff] must also subjectively perceive that environment to be abusive." *Burgos v. Southeast Works,* 2017 U.S. Dist. LEXIS 84915, at *22 (W.D.N.Y. May 31, 2017) (*quoting Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014)); *see Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) (isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment).

Through the use of cunning drafting techniques and charged terms, Cantlon and Kidd seek to ascribe the alleged harassing behavior of Jaeger to their hostile work environment claims, regardless of when it occurred, who was involved, and whether they were aware of the conduct at the time. As set forth below, the conduct alleged does not rise to the level of discriminatory intimidation, ridicule and insult so severely threatening or humiliating to constitute a hostile work environment.

## A.   Cantlon

In Count X (Compl. ¶ 458 (citing ¶¶ 312-315)), Cantlon cites three instances in support of her cause of action for hostile work environment:

- a December 2013 meeting where DeAngelis allegedly chastised her for her tone but did not reprimand a male colleague who slammed his fist on the table, shouted at Cantlon and left the meeting, slamming the door;

- an April 24, 2017 meeting where DeAngelis approached Cantlon from across the room, stood over her while she sat in a chair, stuck his finger in her face and "demanded" that she take responsibility for and apologize to her colleagues for damage she had caused in the department; and

- Alleged exclusion, along with several of the plaintiffs, from department meetings to discuss the employment candidacy of plaintiff Heilbronner.

The first two allegations reflect nothing more than isolated episodes of a colleague expressing disagreement with Cantlon's conduct following her complaints about Jaeger. DeAngelis' alleged comments were not severely threatening or humiliating to rise to a level of a hostile work environment, nor does Cantlon allege that they were indicative of a series of discriminatory incidents, based on her gender, that were repeated and continuous. The case law is replete with findings that "work-related criticisms" like DeAngelis' comments "could not reasonably be deemed to have given rise to an objectively hostile work environment." *McCullough*, 942 F. Supp. 2d at 386 (*citing Hill v. Nicholson*, 383 Fed. Appx. 503, 511 (6th Cir. 2010)); *Fleming v. MaxMara USA, Inc.*, 371 Fed. Appx. 115, 119 (2d Cir. 2010) (allegations that defendants "wrongly excluded plaintiff from meetings, excessively criticized her work … threw books, and sent rude emails to her" not sufficient to support hostile work environment claim).

In any event, the Complaint plainly alleges that the alleged exclusions from meetings, noted in the third bullet point above, occurred not only to her, but also to male plaintiffs Mahon and Piantadosi. *See* Compl. ¶¶ 418, 426. This allegation cannot support Cantlon's claim of hostile work environment because the conduct cannot be said to be gender-based, directed solely to a member of a protected class. *Jamison v. Chapman,* 2009 U.S. Dist. LEXIS 104059, at *14 (N.D.N.Y. Nov. 9, 2009) (workplace is not considered hostile "if the environment is equally intimidating or offensive for both members and non-members of plaintiff's protected class").

Although not specifically pled as part of the hostile environment claims, plaintiffs likely will expect this Court to refer back to the allegations consuming the first 376 paragraphs of their Complaint to find other instances that purportedly support Cantlon's claim. Notably, virtually *all* of the conduct set forth in those paragraphs took place between 2007 and 2013, and thus is time-

barred from supporting this cause of action.[15] *See, e.g., McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (Title VII claim must be filed with EEOC within 300 days of discriminatory act); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (NYSHRL hostile work environment claims subject to 3-year statute of limitations).[16]

Cantlon's hostile work environment claims are quite similar to those this Court rejected in *Marcus,* 14 F. Supp. 3d at 112. Although Cantlon uses terms such as "illegal conduct," "sex-based harassment," "intimidating," "victims," "hostility," "disdain" and "abusive," the only conduct she describes are included in the bullet points above, or the two isolated incidents in 2010 and 2014 discussed in Note 16. Like the allegations in *Marcus,* Cantlon's allegations fall "well short, as a matter of law, of describing discriminatory conduct that is objectively threatening, intimidating, humiliating or harassing, let alone so severe or persuasive, as to render her hostile work

---

[15] And to the extent the date(s) of the conduct alleged are not stated, it is very likely that such conduct took place prior to 2013, otherwise, plaintiffs certainly would have alleged later dates.

[16] In response to this motion, plaintiffs may argue that the doctrine of continuing violation applies to save Cantlon's Title VII claims. This doctrine provides that if a plaintiff experiences a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last act of discrimination in furtherance of it. *Washington v. County of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004). However, the incidents constituting offensive behavior must "be more than episodic; they must be sufficiently continuous and concerted in order to be deemed persuasive." *Dickens v. Hudson Sheraton Corp., LLC,* 167 F. Supp. 3d 499, 516 (S.D.N.Y. 2016) (*quoting Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001)). To rely on this doctrine, Cantlon would have to plead conduct so severe and pervasive that the conditions of her employment were altered, and an act contributing to the claim occurring within the filing period. *Id.* (*citing Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S 101, 117 (2002)). Cantlon appears to claim that two incidents, which purportedly occurred at BCS faculty dinner parties in 2010 and 2014 "reflected the hostile environment that Jaeger both generated and took advantage of for a decade." Compl. ¶ 176. The Complaint alleges a comment at a party made by Jaeger in 2010 in Cantlon's presence regarding a graduate student, and an improper question posed by another faculty member to Cantlon in 2014. *Id.* at ¶¶ 114, 176. These two events are at best episodic, and neither is within the statute of limitations. In addition, there are no allegations in the Complaint that Cantlon (or her husband Hayden, who was present) complained at the time, that either of these incidents altered Cantlon's work environment, or that the purported hostile conduct interfered with her job performance. *See Dickens*, 167 F. Supp. 3d at 516; *Nat'l R.R. Passenger*, 536 U.S. at 117.

environment claims plausible." 14 F. Supp. 3d at 113. As the court noted in *Marcus,* Title VII and the NYSHRL are not general civility codes "empowering courts to act as super-personnel departments, poised to question the reasonableness or fairness of every supervisor-employee interaction." *Id.* at 114. Like the plaintiff's claim in *Marcus*, Cantlon's claim should be dismissed.

**B.     Kidd**

Kidd's hostile work environment claim appears to be based on her perceived notion of inadequacy of DeAngelis' actions after Bixby spoke to him in 2013 about her "weird" interactions with Jaeger. Compl. ¶ 167. In addition, she refers to, and may be relying on, allegations that "Jaeger persistently sexually harassed Kidd while she was a student from 2007 to 2013." *Id.* at ¶ 465. These latter allegations, even if supported by the facts alleged, should not be considered by the Court in analyzing this claim for two reasons. First, as Kidd acknowledges, she was a student, not an employee at the time of this alleged activity (*id.*), and cannot therefore, as a matter of law, support an essential element of a Title VII hostile work environment claim – that the conditions of her *employment* were altered. *See Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015). Second, her claims of harassment from 2007-2013 are time barred. *See, e.g., McGullam*, 609 F.3d at 75 (Title VII); *Van Zant*, 80 F.3d at 714 (NYSHRL).[17]

What remains for the Court to consider then is Kidd's allegation that she had to work in proximity to Jaeger as a faculty member and "hear about his continued harassment of women," none of which is detailed in the Complaint, allegations the same as those asserted by Cantlon and disposed of above, and the additional claims that UR "punished" her by labeling her unreliable,

---

[17] Kidd also may seek to string together interactions that occurred between she and Jaeger in 2007 and 2008 (some prior to her enrollment at UR) with allegations that Jaeger spread rumors about her credibility in 2016-17. Compl. ¶ 136. Aside from the fact that Kidd was not an employee of UR in 2007 or 2008, the incidents of which she complains are episodic and not continuous, and thus cannot support her claim. *See Dickens*, 167 F. Supp. 3d at 516.

characterized her as a scorned lover of Jaeger, failed to "properly" protect her confidentiality, and "clearly align[ed] itself with Jaeger." Compl. ¶¶ 466, 470. Again, even accepting them as true, these allegations do not rise to the level of "discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of the victim's employment." *McCullough*, 942 F. Supp. 2d at 385 (*quoting Harris,* 510 U.S. at 21). Further, and most telling, Kidd does not plead that the conditions of her employment were altered by this alleged behavior. To the contrary, the Complaint outlines a stellar academic who rose from an "impressive undergraduate" to a decorated Ph.D. student to an active faculty member who accepted invitations to be a visiting scientist at other institutions. And significantly, the Complaint states that after leaving UR to work at those two other institutions, Kidd *voluntarily* returned to the purported hostile work environment at UR in 2014 as an Assistant Professor (Compl. ¶ 59), a fact that simply contradicts that there was a hostile work environment at all. For these reasons, Kidd's cause of action should be dismissed.

## POINT IV
### BIXBY'S TITLE IX HOSTILE EDUCATION ENVIRONMENT CLAIM SIMILARLY IS DEFICIENT AND MUST BE DISMISSED (COUNT XII)

Bixby asserts a cause of action for a hostile education environment against UR under Title IX, 20 U.S.C. § 1681(a), as well as the NYSHRL. A Title IX claim is "governed by traditional Title VII" hostile environment jurisprudence. *Papelino v. Albany Col. of Pharm. of Union Univ.*, 633 F.3d 81 (2d Cir. 2010) (*quoting Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 744 (2d Cir. 2003)). Thus, as set forth in detail above, Bixby must show conduct "so severe, persuasive, and objectively offensive that it effectively bar[red] … access to an educational opportunity or benefit." *Id.* at 89 (*quoting Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999)). In addition, under Title IX, Bixby also must establish that a school official "with authority to address the alleged discrimination and to institute corrective measures" had "actual knowledge" of the discrimination

and failed to adequately respond. *Id. (quoting Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). A school fails to respond adequately to a complaint of discrimination if it provides no response, or if the response it does provide "amount[s] to deliberate indifference to discrimination." *Id.* at 89*; see Elgamil v. Syracuse Univ.,* 2000 U.S. Dist. LEXIS 12598, at *25 (N.D.N.Y. Aug. 21, 2000) (*quoting Gebser,* 524 U.S. at 291).

Like her co-plaintiffs, Bixby populates her cause of action for hostile educational environment with labels and charged terms such as "relentless harassment." That is not enough to state a facially sufficient cause of action. *See McCullough,* 942 F. Supp. 2d at 385-86; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and the formulaic recitation of the elements of a cause of action will not do"). Bixby's allegation that she felt "viscerally unsafe" around Jaeger (Compl. ¶ 478) is precisely the sort of label and conclusion that is insufficient to state a viable claim. *See Twombly*, 550 U.S. at 555.

Bixby states she avoided Jaeger, but alleges no sex-based harassment, hostile or otherwise, to which she was subjected by Jaeger. Instead, she claims that she "was immediately put off by Jaeger's boundary-pushing, which included standing close behind her without speaking and taking her photograph after she told him not to." Compl. ¶ 144. She claims that she observed him speaking to other students and post-docs about sex, but she does not allege that he spoke to her about sex. *Id.* In addition, the month following the photograph incident, Bixby alleges that after she gave a lunch talk, Jaeger "took up most of the question period with his own rambling." *Id.* at ¶ 159. Finally, she alleges that she attended a BCS dinner in November 2015 where she overheard Jaeger state that the sexual harassment training by BCS was "stupid." *Id.* at ¶ 180. These alleged incidents simply do not, on their face, state a claim for a hostile environment. *Papelino*, 633 F.3d at 89 (Title

21

IX plaintiff must show he subjectively perceived the environment to be hostile or abusive, and that environment objectively was hostile or abusive, i.e., permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter condition of his educational environment). Moreover, with the exception of the comment by Jaeger in November 2015, the Complaint does not specify when the alleged harassment or inappropriate comments took place. *See* Compl. ¶¶ 144, 159. It stands to reason however, that they occurred prior to her complaints to DeAngelis in 2013. As a result, again with the exception of the comment she overheard in November 2015,[18] her earlier allegations are time barred. *See Irrera v. Humpherys*, 695 F. App'x 626, 628 (2d Cir. 2017) (three-year statute of limitations applies to Title IX claims).

Even if Bixby could establish that the conduct she experienced or observed was not merely tinged with offensive sexual connotations, but actually was so hostile or abusive that it constituted discrimination because of sex, and that nearly every one of her allegations are not time barred, she has not pled facts demonstrating that DeAngelis failed to adequately respond to her complaints. Bixby claims that after she was told by a prospective post-doctoral student considering UR that she was concerned she would have to work with Jaeger after witnessing Jaeger's "predatory behavior" at a conference, she decided to report Jaeger's "mistreatment of graduate students, and women in particular, to DeAngelis." *Id.* at ¶ 159. Again, she states in conclusory language that DeAngelis "took no substantive action against Jaeger, nor did he provide any support to Bixby." *Id.* at ¶ 480. However, the allegations set forth earlier in the Complaint contradict such a conclusion. Indeed, Bixby did not report to DeAngelis incidents of sex-based offensive conduct by Jaeger toward her, let alone conduct that was so severe, persuasive, and objectively offensive

---

[18] This allegation is insufficient to state a claim for hostile educational environment under Title IX.

that it altered the conditions of her educational environment. *Id.* at ¶ 167. Regardless, DeAngelis commenced an investigation, during which he conducted interviews, collected information and analyzed the applicable UR policies to determine whether the behavior that Bixby and others had reported violated UR provisions. Based on the policy in place at the time, DeAngelis determined no violation occurred. *Id.* at ¶ 161. Despite that conclusion, he met twice with Jaeger and discussed with him his "undesirable" behaviors, his socializing with students and the impact of his actions on others (*id.* at ¶¶ 167-68) and then reported back to Bixby, outlining his investigation and conclusions (*id.* at ¶ 161). On these facts asserted in the Complaint, Bixby simply cannot demonstrate the sort of deliberate indifference to her complaints that justifies a viable claim.

### POINT V
### ASLIN AND HAYDEN FAIL TO STATE A LEGALLY COGNIZABLE
### BREACH OF CONTRACT CLAIM (COUNTS II AND IX)

To state a viable claim for breach of contract, a plaintiff must allege two closely related, indispensable elements. First, a plaintiff's complaint "must contain, in non-conclusory language, the specific terms of the parties' contract upon which liability is predicated." *Rochester-Genesee Reg'l Transp. Auth. v. Cummins, Inc.*, 2010 U.S. Dist. LEXIS 75805, at *11 (W.D.N.Y. July 28, 2010) (granting dismissal where plaintiff alleged defendants had failed to deliver buses and engines "manufactured in accordance with the specifications" agreed upon by the parties, but failed to cite any particular contractual provision allegedly violated) (citing *Sirohi v. Trustees of Columbia Univ.*, 1998 U.S. App. LEXIS 22519, at *5 (2d Cir. April 16, 1998); *Sud v. Sud*, 211 A.D.2d 423, 424 (1st Dep't 1995)); *see Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 468 (S.D.N.Y. 2014) ("[T]he pleadings 'must allege the provisions of the contract upon which the claim is based.'" (quoting *Atkinson v. Mobil Oil Corp.*, 205 A.D.2d 719, 720 (2d Dep't 1994)).

Second, the plaintiff must assert non-conclusory allegations as to "how defendants breached" the contractual provisions at issue. *See Murphy v. Neuberger*, 1996 U.S. Dist. LEXIS 11164, at \*45 (S.D.N.Y. Aug. 5, 1996). Thus, a plaintiff must specify "the defendant's acts or omissions constituting the breach." *Marshall*, 51 F. Supp. 3d at 468 (citing *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 183 (S.D.N.Y. 2009)); *see Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011) ("Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." (internal citations omitted)).

Aslin and Hayden fail to plead either of these requisite elements. They do not cite to any provision of the alleged contracts they claim UR violated. At most, Aslin and Hayden reference, but fail to define, employment contracts that they contend granted them "permanent tenure" and the "expectation of continued employment." Compl. ¶¶ 386, 436. They do not identify specific contractual terms upon which an alleged breach could be based; in fact they do not allege that UR revoked tenure or fired them. This deficiency alone requires dismissal. *See Rochester-Genesee Reg'l Transp. Auth.*, 2010 U.S. Dist. LEXIS 75805, at \*11-12.

Aslin and Hayden also fail to allege "acts or omissions" whereby UR allegedly breached these claimed employment contracts. They repeat the allegations raised in their retaliation claims – that UR portrayed their complaints as "rumors and gossip" or "misinformation," violated confidentiality, refused to hire Hayden's wife, made a "derisory offer" to retain Hayden, etc.[19] – but they totally fail to connect these purported acts to their alleged employment contracts. This failure likewise mandates dismissal. *See Murphy*, 1996 U.S. Dist. LEXIS 11164, at \*45.

---

[19] Plaintiffs repeat, virtually *verbatim*, portions of the allegations previously asserted in their retaliation claims. *Compare* Compl. ¶¶ 380 (Aslin, Count I) and 433 (Hayden, Count VIII) *with* Compl. ¶¶ 387 (Aslin, Count II) and 437 (Hayden, Count IX).

Plaintiffs' attempt to sidestep these pleading requirements by alleging that UR's actions "constructively discharged" Aslin and Hayden as of the dates they voluntarily resigned (*see* Compl. ¶¶ 388-89, 438-39) likewise must be rejected. *See Keady v. Nike, Inc.*, 116 F. Supp. 2d 428, 438 (S.D.N.Y. 2000) (*vacated in part on jurisdictional grounds, none of which related to the merits*, 23 Fed. Appx. 29 (2d Cir. 2001)). In *Keady*, the court granted a motion to dismiss a similarly conclusory claim alleging that a university breached the plaintiff's employment agreement via "constructive discharge." *See id.* (citing plaintiff's failure "to allege, in nonconclusory language, the provision(s) of the contract upon which liability is predicated … or the nature of the breach"). That is precisely the scenario here, where plaintiffs attempt to manufacture a contract claim based on allegations that their employment became "intolerable" by virtue of actions not alleged to have violated their purported contracts. As in *Keady*, the contract claims must be dismissed.

## POINT VI
### PLAINTIFFS HAVE FAILED TO STATE A CLAIM OF DEFAMATION *PER SE* (COUNT XIV)

In Count XIV (Compl. ¶¶ 514-532), seven of the nine plaintiffs repackage certain claimed "retaliatory" statements in an effort to state a claim of defamation *per se* against Seligman and UR:

(1) Seligman telling UR's Linguistics Chair that the "complaints against Jaeger were hearsay" (Compl. ¶¶ 515(a), 294);

(2) Seligman stating to UR's Neuroscience Chair "that the complaints against Jaeger were hearsay and that the Plaintiffs had overreacted" (*id.* at ¶¶ 515(b), 295);

(3) BCS Chair DeAngelis telling BCS faculty that he had emails showing that there had been "manipulation and deception of faculty members" and "smearing" of Jaeger in connection with the complaints against him (*id.* at ¶ 518);

(4) Jaeger writing to "influential people in the scientific community stating that he had been falsely accused and bullied, and that the person who had complained against him had resigned" (*id.* at ¶ 521);

(5)    Seligman denying the "allegations in the Plaintiff's EEOC Complaints" and likening "the complaint to a well-known article in the *Rolling Stone*, which was later revealed to be based on fabricated testimony" (*id.* at ¶ 523); and

(6)    a Special Committee of UR Trustees stating that it had "requested and sincerely hopes that the complainants will reconsider and cooperate with the [independent] investigation" being conducted surrounding plaintiffs' allegations (*id.* at ¶ 527).

"To state a plausible claim for defamation, a plaintiff must allege that each defendant: (1) made a defamatory statement of fact; (2) which was false; (3) that was published to a third party; (4) which concerned the plaintiff; (5) and was made with the requisite level of fault on the part of the speaker; (6) which caused special harm or constituted slander *per se*; and (7) was not protected by privilege." *Whipple*, 213 F. Supp. 3d at 497 (citing *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001)). None of the six alleged statements satisfies these criteria, and thus, none is actionable. Accordingly, Count XIV should be dismissed.

## A.    Five of the Six Alleged Statements Contain No Defamatory Statement of Fact

"Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (quoting *Aronson v. Wiersma*, 65 N.Y.2d 592, 593 (N.Y. 1985)). A statement can be construed as defamatory *only* if it "exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or induces an evil opinion of one in the minds of right-thinking persons, and deprives one of confidence and friendly intercourse in society." *Id.* (internal quotations omitted) (citing *Golub v. Enquirer/Star Group, Inc.*, 89 N.Y.2d 1074, 1076 (N.Y. 1997)). Courts must interpret the words as an ordinary person would interpret them, and a defamatory meaning cannot be found based upon "a strained or artificial construction." *Ulrich v. Moody's Corp.*, 2014 U.S. Dist. LEXIS 145898, at *34-35 (S.D.N.Y. March 31, 2014)

(quoting *Golub*, 89 N.Y.2d at 1076). Thus, the standard is an objective one, and a plaintiff's subjective interpretation of a statement cannot render it defamatory.

Merely stating that a complaint was based on "hearsay," that an individual "overreacted," that an individual's allegations were "denied," that an employee "resigned," or that individuals had declined to participate in an investigation, cannot credibly be alleged to meet the standard for actionable defamation – inducing an "evil opinion" of the plaintiffs. *See Celle*, 209 F.3d at 177. Accordingly, any claims based on statements 1, 2, 4, 5, and 6 are facially deficient and cannot state a claim because, as a matter of law, they do not contain any defamatory statement of fact.

## B.     Three of the Statements Alleged Are Not "Of and Concerning" Plaintiffs

Statements that are not "of or concerning" a plaintiff, by definition, cannot constitute defamation. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006). The "of and concerning" requirement "stands as a significant limitation on the universe of those who may seek a legal remedy for communications they think to be false and defamatory." *Id.* (dismissing corporation's claim where alleged statement mentioned a related company but not the plaintiff).

Whether a statement is "of and concerning" a plaintiff is a question of law, and a claim based on a statement that is not directed toward a particular plaintiff must be dismissed. *See, e.g., Thai v. Cayre Group, Ltd.*, 726 F. Supp. 2d 323, 334-35 (S.D.N.Y. 2010) (a reasonable listener would not take employer's statement that it was denying employee a swipe card for "security reasons" as impugning plaintiff or her integrity). "[W]here extrinsic facts are relied upon to prove such reference the party alleging defamation must show that it is reasonable to conclude that the publication refers to him or her and the extrinsic facts upon which that conclusion is based were known to those who read or heard the publication." *Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 174 (W.D.N.Y. 2003) (quoting *Chicherchia v. Cleary*, 207 A.D.2d 855, 856 (2d

Dep't 1994)).

Statements 1, 3, and 4 are not actionable because they are not "of and concerning" plaintiffs. Plaintiffs do not even allege that statement 1 refers to anyone, directly or indirectly. Compl. ¶ 515(a). Any connection between statement 3 (DeAngelis stating that emails showed 'manipulation and deception of faculty members' or that emails "showed widespread lying, deceit, and manipulation of the complaints against Jaeger" (*id.* at ¶ 518)) and plaintiffs is far too general and attenuated to be actionable. There is no allegation that DeAngelis identified the author of the emails or who might have been responsible for any "manipulation or deception." Plaintiffs also have not asserted any non-conclusory allegation of fact to support a claim that the faculty to whom DeAngelis was speaking knew that he was referring to plaintiffs. *See Chicherchia*, 207 A.D.2d at 856. The same is true about statement 4; there is no allegation that the "people in the scientific community" to whom Jaeger allegedly spoke knew who "had complained against him" or had "resigned." Compl. ¶ 521.

**C.      Three of the Statements Are Privileged, and Therefore Are Not Actionable**

A statement made between persons who a share common interest in its subject matter is qualifiedly privileged and is not actionable unless the privilege is rebutted. *Chandok v. Klessig*, 632 F.3d 803, 815 (2d Cir. 2011); *Liberman v. Gelstein*, 80 N.Y.2d 429, 437-39 (1992). The common interest privilege applies to statements between a plaintiff's employer and co-employees that relate to the employer or plaintiff's employment. *See, e.g., Campanella v. County of Monroe*, 853 F. Supp. 2d 364, 371 (W.D.N.Y. 2012) (claims based on memorandum exchanged by plaintiff's employer and co-employees accusing plaintiff of "gossiping" and "conduct unbecoming" barred due to privilege). To plead allegations sufficient to rebut this privilege, a plaintiff must plausibly allege that the statements either were made solely out of spite or ill will, or with knowledge of falsity or reckless disregard for the truth. "Mere conclusory allegations, or charges based upon

28

surmise, conjecture, and suspicion are insufficient to defeat the claim of qualified privilege."
*Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 173 (E.D.N.Y. 2014); *see Campanella*, 853 F.
Supp. 2d at 372 (plaintiff's disagreement with statements is insufficient to allege malice or to rebut
the privilege).

Statements 1, 2, and 3 were made by one UR employee to one or more UR co-employees, and
each related to matters of a "common interest" regarding complaints about Jaeger lodged within UR.
*See id.* at ¶¶ 515, 518, and 521.[20] These statements therefore are privileged. *See Campanella*, 853 F.
Supp. 2d at 371. And, plaintiffs do not assert any non-conclusory allegations to rebut the privilege.
*See Thorsen*, 996 F. Supp. 2d at 173. Indeed, plaintiffs concede that the complaints were in large part
based on "hearsay" rather than complainants' own experiences, and thus, they cannot plausibly allege
that statements 1 or 2 were made solely out of malice or with reckless disregard for their truth. *See*
Compl. ¶¶ 184-89 (alleging that "[m]ost of the Plaintiffs had no personal grievance against Jaeger"
and that their complaints were based on verbal reports from others). Similarly, plaintiffs' allegation
that DeAngelis "later" retracted statement 3 at some unidentified time is plainly insufficient to
plausibly allege that he acted with reckless disregard for the truth at the time he uttered the alleged
statement. *See id.* at ¶ 520.

**D.     Plaintiffs Have Failed to Plead Defamation *Per Se***

Where, as here, a plaintiff intends to establish defamation *per se* by alleging that a statement
injured the plaintiff "in his or her trade, business or profession," the plaintiff must plead facts to
support the inference that the alleged statement "imputed incompetence, incapacity or unfitness in the
performance of [plaintiff's] profession." *Thai*, 726 F. Supp. 2d at 331, 335 (citing *Albert*, 239 F.3d at

---

[20] Statement 2, in which Seligman purportedly stated that the plaintiffs had "overreacted," is not
actionable for the additional reason that it is absolutely privileged as a statement of pure opinion.
*See Celle*, 209 F.3d at 178-79; *Aronson*, 65 N.Y.2d at 594.

271).[21] The statement must directly attack the plaintiff in his or her profession, including "a link between a particular profession and a particular disreputable vice of that profession." *Kforce, Inc. v. Alden Personnel, Inc.*, 288 F. Supp. 513, 516 (S.D.N.Y 2003); *see Liberman v. Gelstein*, 80 N.Y.2d 429, 436 (1992) (tenant's statement accusing property owner of threatening to kill the tenant and his family was not defamatory *per se* because the statement did not allege conduct incompatible with being a property owner and was merely "a more general reflection upon the plaintiff's character or qualities"). Likewise, a statement is not defamatory *per se* unless the attack to one's profession is made on the face of the statement, because "statements cannot be slanderous per se if reference to extrinsic facts is necessary to give them defamatory import." *Tagliaferri v. Szulik*, 2016 U.S. Dist. LEXIS 68732, at *6 (S.D.N.Y. May 25, 2016); *see Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*, 2003 U.S. Dist. LEXIS 18772, at *16-17 (S.D.N.Y. Oct. 17, 2013) (citing *Aronson*, 65 N.Y.2d at 594-95).

Here, plaintiffs' count for defamation *per se* is subject to dismissal because plaintiffs have asserted no plausible allegation that any of the six alleged statements constituted a direct attack on their competence, capacity, or fitness as academics. While plaintiffs stretch the purported statements to supposedly call into question their "honesty" and "integrity" (*see* Compl. ¶¶ 530-31), these allegations at most refer to a "general reflection upon the plaintiff's character or qualities," which as a matter of law is insufficient to constitute defamation *per se*. *See Liberman*, 80 N.Y.2d at 436. At a minimum, the alleged statements require reference to extrinsic facts to import an attack on plaintiffs' professional ability, precluding them from supporting a claim of defamation *per se*. *See Tagliaferri* 2016 U.S. Dist. LEXIS 68732, at *6; *Daniels*, 2003 U.S. Dist. LEXIS 18772, at *16-17.

---

[21] Plaintiffs do not purport to rely on the other categories of defamation *per se*—statements importing serious criminal activity, certain types of disease, or certain sexual conduct—and, thus, those categories are not discussed here. *See Campanella*, 853 F. Supp. 2d at 371.

In summary, none of the six alleged statements is actionable. Statements 1, 2, 4, 5, and 6 do not contain any defamatory statement of fact. Statements 1, 3, and 4 are not "of and concerning" plaintiffs. Statements 1, 2, and 3 are protected by the common-interest privilege. Finally, plaintiffs have not pled a basis to conclude that *any* of the six purported statements is defamatory *per se*. For all of these reasons, Count XIV must be dismissed.

**POINT VII**

**THE COURT SHOULD STRIKE PLAINTIFFS' IMMATERIAL ALLEGATIONS AND REQUIRE PLAINTIFFS TO RE-PLEAD IN ACCORDANCE WITH THE FEDERAL RULES**

In addition to the substantive deficiencies addressed in Points I-VI, *supra*, plaintiffs' Complaint violates the Federal Rules in multiple respects. As addressed below, the Court should strike portions of the Complaint and require plaintiffs to re-plead any counts that are not dismissed in compliance with the applicable rules.

**A.    The Court Should Strike Plaintiffs' Immaterial, Impertinent, and Scandalous Allegations**

Rule 12(f) authorizes district courts to strike any matter from a pleading that is "immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f).[22] A motion to strike should be granted where "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *M'Baye v. World Boxing Ass'n*, 2007 U.S. Dist. LEXIS 23173, at *10-11 (S.D.N.Y. March 21, 2007) (holding that allegations regarding dismissed claim for punitive damages could not stand because they "would impermissibly widen the scope of discovery"); *see Anderson v. Davis Polk & Wardwell, LLP*,

---

[22] "Impertinent" and "immaterial" allegations are those that are "neither responsive nor relevant to the issues involved in the action," whereas "scandalous" refers to "any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Anderson v. Davis Polk & Wardwell, LLP*, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012) (quoting 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.37(3) (3d ed. 2010)).

850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012) (the "touchstone" is whether "evidence in support of an allegation would be admissible").

Courts routinely strike allegations that are only tangentially related to counts of hostile work environment and retaliation, including allegations that delve into irrelevant consensual relationships. In *Parrish v. Sollecito*, the court struck allegations that the defendant "a married man, maintained at company expense as his mistress, a corporate employee," which the plaintiff contended reflected "at a minimum a negative attitude towards women, their availability for sexual purposes for a fee, and a close intertwining of that attitude with the employment setting itself." 2002 U.S. Dist. LEXIS 9453, at *4 (S.D.N.Y. May 24, 2002); *see Cruz v. Oxford Health Plans, Inc.*, 2004 U.S. Dist. LEXIS 23264, at *4-5 (S.D.N.Y. Nov. 17, 2004) (striking allegations that plaintiff's supervisor had a sexual affair with a co-employee because there was no allegation connecting the affair to plaintiff and "no allegation that the affair was anything other than consensual"). Similarly, in *Anderson*, the court struck allegations regarding "the consensual sexual activities" of co-employees, which were "so tangential to plaintiff's claims of workplace discrimination that evidence supporting them would not be admissible." *Anderson*, 850 F. Supp. 2d at 417.

Here, plaintiffs have asserted dozens of allegations that have nothing to do with their claims and for which their only potential motive could be to embarrass defendants or nonparties. The Court should issue a general directive requiring plaintiffs to delete any "immaterial, impertinent, or scandalous" allegations, and at minimum, should strike the following paragraphs from the Complaint:

- ¶¶ 44-46, 343, 344 – Plaintiffs make numerous allegations regarding Seligman's consensual relationship with a UR employee and Clark's consensual relationship with a UR employee. Neither employee was ever a part of BCS. These allegations have absolutely no bearing on any aspect of this case, and are even further afield than those addressed in the cases cited above. *See Anderson*, 850 F. Supp. 2d at 417.

- ¶ 92 – Plaintiffs allege that Jaeger had sexual relationships with "visiting professors and speakers," none of whom are alleged to have been students at the time. Allegations as to

Jaeger's private, consensual relationships with other adults who happen to be in academia are not relevant or admissible.

- **¶¶ 94-106** – These paragraphs go on at length regarding allegations of Jaeger "bullying" students and colleagues, and of him requesting "favors" such as rides or meals. None of these allegations relate to any complaints of alleged sexual harassment.

- **¶¶ 124, 130** – Plaintiffs' allegations regarding Jaeger's consensual relationship with his partner Chigusa Kurumada have absolutely nothing to do with plaintiffs' claims. Plaintiffs should not be permitted to use their pleading to embarrass Jaeger and Kurumada. Indeed, the attacks on Kurumada are especially cruel.

- **¶¶ 125-26** – These paragraphs assert allegations, including salacious details, regarding an alleged consensual sexual relationship between Jaeger and an unidentified UR *graduate*. These allegations are both scandalous and immaterial.

- **¶¶ 344-45** – Plaintiffs assert numerous irrelevant allegations to attack Clark and Seligman personally – Clark's relationship and travel with his "sexual partner;" Clark and Seligman's decisions as to spending of UR funding; and allegations that a music professor retaliated against a student who "rejected his sexual advances."

## B.     Plaintiffs' Selective and Unauthorized Use of Pseudonyms is Improper

While plaintiffs had no hesitation identifying Jaeger's partner by name in allegations denigrating her professionally and purporting to provide intimate details regarding her sex life (*see e.g.,* Compl. ¶¶ 124, 130), they use pseudonyms to conceal from defendants the identities of approximately twenty-three other nonparties referenced throughout the Complaint. *See id.* at ¶¶ 75, 92, 95, 98, 101, 106, 108, 113, 117, 125, 137-51, 212. Plaintiffs' unilateral decision to use pseudonyms to refer to "third parties who were graduate students during the relevant period" with the promise to "disclose their identities during discovery," is as legally improper as it is disingenuous.[23] *See id.* at ¶ 75 n.17.

---

[23] In several instances pseudonyms were used to refer to individuals who are not even alleged to have been students at the time. *See, e.g.,* Compl. ¶¶ 92 (visiting professors), 98 (linguistics professor), and 125 (*former* student), and these allegations should be stricken.

Rule 5.2(a) addresses "redacted filings" and authorizes the unilateral redaction of only social security/taxpayer identification numbers, birth dates, names of minors, and financial account numbers. Fed. R. Civ. P. 5.2(a).  Otherwise, a party seeking to withhold information from *public filings* for privacy reasons is required to request and obtain relief to file all or portions of a document "under seal," while serving an *unredacted* copy of the document on the adverse party. *See generally* Fed. R. Civ. P. 5.2(a, d, e, f); Local R. Civ. P. 5.3.

Defendants cannot possibly respond to allegations where it is impossible to know what plaintiffs are alleging about whom. The Court should strike the allegations regarding nonparties identified only via pseudonyms, or in the alternative, order plaintiffs to adhere to the Rules, and re-plead any counts that are not dismissed setting forth the names of all individuals referenced. To the extent it is appropriate to withhold any individuals' identities, plaintiffs should adhere to the rules and apply to serve and file the unredacted copy under seal with a redacted copy electronically filed.

## C.      Plaintiffs Should Be Required to Re-Plead in Compliance with Rules 8 and 10

Rule 8(a)(2) instructs that "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief … ." Fed. R. Civ. P. 8(a)(2). As the Second Circuit has explained, "[t]he statement should be short because 'unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'" *Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1988) (affirming dismissal of complaint with "surfeit of detail") (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1281, at 365 (1969)); *see Politico v. Promus Hotels, Inc.*, 184 F.R.D. 232, 233-34 (E.D.N.Y. 1999) ("[a] complaint … should not plead evidence" and "should avoid unnecessary facts, descriptive terms, and repetition").

Rule 10(b), in turn, requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b); *see Politico*, 184 F.R.D. at 234 (a complaint "should, as much as possible, avoid multiple allegations per paragraph").

If ever there were a "mass of verbiage," plaintiffs' 192-page, 538-paragraph Complaint is it, and clearly runs directly afoul of both Rules 8 and 10. Much of the Complaint goes on at length with detailed allegations about matters that are entirely irrelevant. *See, e.g.*, Compl. ¶¶ 74-158 (alleging details of Jaeger's behavior, mostly taking place before 2011, which is irrelevant, time-barred, and pled for incendiary effect); 56-64 (asserting lengthy, detailed allegations regarding plaintiffs' academic credentials, most of which are totally irrelevant). Moreover, the paragraphs throughout the Complaint are excessively lengthy, with some spanning over a page and combining numerous wide-ranging allegations. *See, e.g., id.* at ¶¶ 39, 48, 49 56. Indeed, it is fair to say that almost every paragraph in the Complaint is improper under Rules 8 and 10.

## CONCLUSION

For the reasons set forth above, the Court should dismiss the Complaint in its entirety. To the extent any counts are not dismissed, the Court should strike plaintiffs' immaterial, impertinent, and scandalous allegations, and require them to re-plead such counts in accordance with Federal Rules 8 and 10.

Dated: February 5, 2018          Respectfully submitted,

WARD GREENBERG HELLER & REIDY LLP
_____s/ Eric J. Ward_____
Eric J. Ward (eward@wardgreenberg.com)
Meghan M. DiPasquale (mdipasquale@wardgreenberg.com)
Tony R. Sears (tsears@wardgreenberg.com)
1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700