UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD ASLIN, KETURAH BIXBY,
JESSICA CANTLON, BENJAMIN HAYDEN,
SARAH HEILBRONNER, CELESTE KIDD,
BRADFORD MAHON, ELISSA NEWPORT
and STEVEN PIANTADOSI,

                              Plaintiffs,

vs.                                        **Civil Case No.: 6:17-cv-06847-LJV**

UNIVERSITY OF ROCHESTER,
JOEL SELIGMAN, and ROBERT CLARK,

                              Defendants.
_____

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT, TO STRIKE CERTAIN ALLEGATIONS AND TO REQUIRE PLAINTIFFS TO RE-PLEAD IN ACCORDANCE WITH RULES 8 AND 10**

**WARD GREENBERG HELLER & REIDY LLP**
1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700

*Attorneys for Defendants*

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................iii

Preliminary Statement........................................................................................................ 1

Point I :   Plaintiffs Fail to Plausibly Allege Material Adverse Actions Sufficient to
           Support Their Retaliation Claims ................................................................... 2

Point II:  Plaintiffs' Aiding and Abetting Claims Also Should be Dismissed ............... 5

Point III: Their Protestations to the Contrary, Cantlon and Kidd Do Not State Hostile
           Work Environment Claims ............................................................................. 6

Point IV: The Continuing Violation Doctrine and the White Report Cannot Salvage
          Bixby's Title IX Hostile Education Environment Claim ............................. 10

Point V:   Aslin's and Hayden's Contract Claims Must Be Dismissed ......................... 11

Point VI:  Plaintiffs Fail to Rebut Any of the Multiple Grounds Requiring Dismissal of the
           Defamation *Per Se* Claims........................................................................... 12

Point VII: Defendants' Motion to Strike and to Require Plaintiffs to Re-Plead Should be
           Granted in All Respects ............................................................................... 14

Conclusion ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Ahmed v. Astoria Bank*, 690 Fed. Appx. 49 (2d Cir. 2017) ............................................................... 9

*Anderson v. Davis Polk & Wardwell, LLP*, 850 F. Supp. 2d 392 (S.D.N.Y. 2012) ......................... 14

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ............................................................. 5

*Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272 (S.D.N.Y. 2013) ....................... 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................... 6

*Black v. Zaring Homes*, 104 F.3d 822 (6th Cir. 1997) ..................................................................... 10

*Boza-Meade v. Rochester Hous. Auth.*, 170 F. Supp. 3d 535 (W.D.N.Y. 2016) ............................ 7

*Brown v. Hot, Sexy and Safer Productions, Inc.*, 68 F.3d 525 (1st Cir. 1995) ............................ 10

*Burlington,* 548 U.S. 53 (2006) ........................................................................................................... 2

*Campanella v. County of Monroe*, 853 F. Supp. 2d 364 (W.D.N.Y. 2012) .................................. 13

*Chicherchia v. Cleary*, 207 A.D.2d 855 (2d Dep't 1994) ................................................................. 13

*Chukwueze v. NYCERS (N.Y. City Emples. Ret. Sys.)*, 891 F. Supp. 2d 443 (S.D.N.Y. 2012) ...... 7

*Elgamil v. Syracuse Univ.*, 2000 U.S. Dist. LEXIS 12598 (S.D.N.Y. Aug. 22, 2000) ................. 11

*Employers Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139 (2d Cir. 2014) ........................... 4

*Fahrenkrug v. Verizon Servs. Corp.,* 652 Fed. Appx. 54 (2d Cir. 2016) ........................................ 6

*Goel v. Bunge, Ltd.*, 820 F.3d 554, (2d Cir. 2016) ...................................................................... 1, 6

*Grimes-Jenkins v. Consol. Edison Co. of N.Y.*, 2017 U.S. Dist. LEXIS 77710
  (S.D.N.Y. 2017) .................................................................................................................... 9

*Hicks v. Baines,* 593 F.3d 159 (2d Cir. 2010) .................................................................................... 2

*Holcomb v. State University of New York at Fredonia*, No. 12-cv-673 (Unpublished)
  (W.D.N.Y. Sept. 29, 2016), *aff'd* 698 Fed. Appx. 30 (2d Cir. 2017) ........................................ 2

*Irrera v. Humpherys*, 695 F. Appx. 626 (2d Cir. 2017) .................................................................. 11

*Kader v. Paper Software*, 111 F.3d 337 (2d Cir. 1997) ................................................................. 12

*Keady v. Nike, Inc.*, 116 F. Supp. 2d 428 (S.D.N.Y. 2000), *vacated in part on jurisdictional
  grounds, not on the merits*, 23 Fed. Appx. 29 (2d Cir. 2001) ..................................................... 11

*Kforce, Inc. v. Alden Personnel, Inc.*, 288 F. Supp 513 (S.D.N.Y 2003) ...................................... 14

*Leehim v. New York City Dep't of Educ.*, 2017 U.S. Dist. LEXIS 192747
  (S.D.N.Y. Nov. 21, 2017) ........................................................................................................ 12

*Liberman v. Gelstein*, 80 N.Y.2d 429 (1992) .................................................................................. 14

*M'Baye v. World Boxing Ass'n*, 2007 U.S. Dist. LEXIS 23173
  (S.D.N.Y. March 21, 2007) ..................................................................................................... 15

*Marcus v. Barilla Am. NY, Inc.,* 14 F.Supp.3d 108 (W.D.N.Y. 2014) ...................................... 4, 8

*Martin v. Citibank, N.A.*, 762 F.2d 212 (2d Cir. 1985) .................................................................. 12

*Matthews v. Corning,* 77 F.Supp. 3d 275 (W.D.N.Y. 2014) ............................................................ 2

*Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534 (E.D.N.Y. 2014) ....................................... 7

*Mineweaser v. City of N. Tonawanda*, 2016 U.S. DIST Lexis 37262
  (S.D.N.Y March 21, 2016) ....................................................................................................... 3

*Morales-Evans v. Admin. Office of the Courts of New Jersey*, 102 F. Supp.2d 577
    (D. N.J. 2000) .................................................................................................................. 9
*Popat v. Levy*, 253 F. Supp. 3d 527 (W.D.N.Y 2017) ................................................................ 5
*Quinn v. Green Tree Credit Corp.* 159 F.3d 759 (2d Cir. 1998) ................................................ 11
*Raneri v. McCarey*, 712 F. Supp.2d 271 (S.D.N.Y. 2010) .......................................................... 5
*Scaria v. Rubin*, 117 F. 3d 652 (2d Cir. 1997) ............................................................................ 5
*Sealy v. State Univ. of N.Y.,* 2018 U.S. Dist. LEXIS 36678 (E.D.N.Y. March 5, 2018) ............ 3, 5
*Shultz v. Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298 (2d Cir. 2017) .................... 2
*Tagliaferri v. Szulik*, 2016 U.S. Dist. LEXIS 68732 (S.D.N.Y. May 25, 2016) .............................. 14
*Taylor v. City of New York*, 207 F. Supp. 3d 293 (S.D.N.Y. 2016)................................................ 7
*Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556 (2d Cir. 2011) ........................... 2
*Ulrich v. Moody's Corp.*, 2014 U.S. Dist. LEXIS 145898 (S.D.N.Y. March 31, 2014) .............. 13
*Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708 (2d Cir. 1996) ............................................ 8
*Whipple v. Reed Eye Assoc.*, 213 F. Supp. 3d 492 (W.D.N.Y. 2016) ..................................... 4, 6
*Woodard v. TWC Media Sols., Inc.*, 2011 U.S. Dist. LEXIS 1536 (S.D.N.Y. Jan. 3, 2011),
    *aff'd* 487 Fed. Appx. 613 (2d Cir. 2012) ..................................................................... 10
*Zembiec v. County of Monroe*, 766 F.Supp. 2d 484 (W.D.N.Y. 2011),
    *aff'd* 468 Fed. Appx. 39 (2d Cir. 2012) ........................................................................ 5

**Statutes**

42 U.S.C. § 2000e(f) ................................................................................................................. 9

**Rules**

Fed. R. Civ. P. 12(f) ................................................................................................................ 14
Fed. R. Civ. P. 5.2 .................................................................................................................. 15
Fed. R. Civ. P. 10(b) ............................................................................................................... 15
Fed. R. Civ. P. 8(a)(2) ............................................................................................................. 15
W.D.N.Y. Local R. Civ. P. 5.3 ................................................................................................ 15

**P**RELIMINARY **S**TATEMENT

Plaintiffs' opposition to defendants' motion to dismiss seems designed to muddle the issues to such a degree that the Court is persuaded to permit their claims to survive. Regardless, no matter how they characterize the allegedly retaliatory conduct against them, they do not plausibly allege adverse material employment actions. Their insistence that the conduct of Professor Jaeger in 2007-2013 – conduct of which UR was not even aware at the time and is now time-barred – establishes plausible claims for hostile work or education environment is not supportable. They fail to allege a breach of contract because they cannot point to any contractual terms allegedly breached by UR. And they have to impossibly twist words and meaning to try to establish defamation *per se*.

The legal and factual contradictions that litter plaintiffs' memorandum in opposition to UR's motion number too many to review here. But most glaring is plaintiffs' request that the Court take judicial notice of the White report – the report issued at the conclusion of the very investigation that plaintiffs allege to be retaliatory, in which they refused to participate and that they claim to be "inherently biased" and "structurally unsound." Opp. at 1, 6-7. In making this request, plaintiffs implicitly admit that that the Court must go outside the four corners of their 190+ page Complaint to find a plausible count. Doing so at this stage is not legally permissible. *See, e.g., Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016) (court may not consider extrinsic material on motion to dismiss unless it is incorporated by reference or appended to the complaint). In any event, taking judicial notice of the White report would include adopting its legal conclusions that plaintiffs have no viable cause of action. Indeed, their voluminous Complaint notwithstanding, plaintiffs can state no plausible cause of action and the case should be dismissed.

**POINT I**
**PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE MATERIAL ADVERSE**
**ACTIONS SUFFICIENT TO SUPPORT THEIR RETALIATION CLAIMS**

UR's motion does not "avoid the key question" for retaliation, nor does it misstate the pleadings standard plaintiffs must meet. Opp. at 1-2. The issue is whether the plaintiffs have *plausibly* alleged conduct that rises to the level of *materially* adverse employment actions, that is, retaliation that causes an injury or harm to the point it could well dissuade a reasonable employee from making discrimination claim. *Shultz v. Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 309 (2d Cir. 2017); *Matthews v. Corning,* 77 F. Supp. 3d 275, 295 (W.D.N.Y. 2014). As set forth in UR's original brief and below, they have not.[1]

Plaintiffs repeatedly state that "context matters," a contention that is uncontroverted. *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556 (2d Cir. 2011). Yet plaintiffs offer nothing but conclusory, misleading descriptions of allegations set forth in a complaint drafted to confuse. Plaintiffs hope to convince this Court that any and all activity by UR should support each individual plaintiff's claims of retaliation. However, the "context" by which this Court is to review each plaintiff's claim of retaliation requires specific *material* adverse employment actions as to that particular plaintiff. Title VII's "anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.'" *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006).

---

[1] Courts have held, both before and after *Burlington,* 548 U.S. at 53 and *Hicks v. Baines,* 593 F.3d 159 (2d Cir. 2010) that materially adverse actions for purposes of Title VII retaliation claims include termination, demotion evidenced by a decrease in wage or salary, or the material loss of wages, benefits, or job responsibilities. *See Holcomb v. State University of New York at Fredonia*, No. 12-cv-673 (Unpublished) (W.D.N.Y. Sept. 29, 2016), *aff'd* 698 Fed. Appx. 30 (2d Cir. 2017). Being treated differently at work, ostracized by other employees, excluded from meetings, name calling, menacing looks and criticism are not actionable. *See Matthews*, 77 F. Supp. 3d at 298. Any suggestion that UR attempted to obfuscate the retaliation standard is without merit.

Plaintiffs' efforts to confuse "context" with specific legally recognizable claims does not magically transform criticism into material adverse employment actions. And the additional "other retaliations" plaintiffs cite to add "context" to criticisms are not of a level of materiality for which Title VII provides protection. Opp. at 2. For example, plaintiffs have failed to demonstrate how the alleged facts somehow abrogate the established case law holding that exclusions from meetings is not material adverse employment action. *McCullough v. Xerox Corp.*, 942 F. Supp. 2d 380, 386-87 (W.D.N.Y. 2013). Similarly, allegations that Jaeger concurred with a colleague's criticism of Kidd's publication record in junior faculty performance reviews reflects non-actionable criticism and nothing more. Compl. ¶¶ 286-87, 418(c).[2] It is "well established … that criticisms, and even written warnings, do not constitute adverse employment action where there is no diminution in pay, job status, or benefits." *Mineweaser v. City of N. Tonawanda*, 2016 U.S. Dist. LEXIS 37262, at *37 (S.D.N.Y March 21, 2016) (quoting *Shaughnessy v. Xerox Corp.*, 2015 U.S. Dist. LEXIS 39537, at *4 (W.D.N.Y. March 27, 2015)).[3] Taken alone or in the aggregate, the actions did not adversely affect any plaintiff in any material way.

Likewise, UR's permissible review of employee emails is not a material adverse employment action. Plaintiffs' citation to an inapposite Seventh Circuit case and their request that the Court take judicial notice of a television news story regarding a Faculty Senate assessment of UR email searches, Opp. at 5-6, hardly support a claim that UR targeted employees engaged in protected activity. As with the White report, plaintiffs' improper request[4] that the Court again

---

[2] Plaintiffs' allegation that "Kidd and Piantadosi fear that Jaeger has used information during the evaluations against them" Opp. at 7-8, is not in the Complaint, and should not be considered.

[3] Terming criticisms as "public excoriations" does not make them anything more than criticisms. *Sealy v. State Univ. of N.Y.*, 2018 U.S. Dist. LEXIS 36678, *38 (E.D.N.Y. March 5, 2018).

[4] *See Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272, 278 (S.D.N.Y. 2013).

search outside support for their claims highlights the lack of plausibility within the Complaint. Similarly, simply stating that UR's "breach" of Kidd's confidentiality had "some real consequences in terms of [Kidd's] working conditions" Opp. at 5, and failing to identify any harm to Cantlon and Aslin, are the type of conclusory allegations this Court has found insufficient to support a claim. *See Marcus v. Barilla Am. NY, Inc.,* 14 F. Supp. 3d 108, 114 (W.D.N.Y. 2014).

Plaintiffs' claim that UR's decision to request an independent review of their allegations was retaliatory not only fails to state a plausible claim, it is virtually incoherent. In one breath plaintiffs allege UR's actions were retaliatory because UR did not adequately address their concerns, and in the next, they allege that UR's decision to address their concerns was retaliatory. Apparently, plaintiffs contend that unless they are permitted to dictate the terms and response, any action (or inaction) by UR in response to their complaints is retaliatory. This position is obviously untenable. *See Employers Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139, 146-47 (2d Cir. 2014) (decision to investigate not in and of itself retaliatory); *Whipple v. Reed Eye Assoc.*, 213 F. Supp. 3d 492, 496 (W.D.N.Y. 2016) (failure to investigate was not adverse employment action).

Plaintiffs' arguments regarding Hayden's and Heilbronner's employment and plaintiffs' RIT opportunity, Opp. at 8-10, are completely contradictory and do not articulate materially adverse employment actions. Plaintiffs argue that UR's failure to meet and/or exceed a competing employment offer to retain Hayden was retaliatory, as was the decision not to hire Heilbronner in BCS because it was made knowing that she would leave UR. Then they make the totally incongruous assertion that UR's purported refusal to assist plaintiffs to leave UR for a competing university was retaliatory. Taken together, "in context," plaintiffs claim that they suffered a material adverse action when UR failed to retain them, and a material adverse action when UR refused to let them leave. It is hard to square these contradictory allegations with one another, let

4

alone with applicable law. *See Scaria v. Rubin*, 117 F.3d 652, 655 (2d Cir. 1997).

## POINT II
### PLAINTIFFS' AIDING AND ABETTING CLAIMS ALSO SHOULD BE DISMISSED

Plaintiffs' claims fail to state actionable conduct on their face. *Sealy,* 2018 U.S. Dist. LEXIS 36678 at *38. Accordingly, they necessarily fail to state a claim against Seligman and Clark for aiding and abetting retaliation under the NYSHRL.[5] Nor, without alleging specific material adverse actions as to a particular plaintiff, can plaintiffs plausibly allege that Seligman and Clark actually participated in conduct giving rise to a retaliation claim. *See Popat v. Levy*, 253 F. Supp. 3d 527, 540 (W.D.N.Y. 2017). Plaintiffs' apparent argument that they satisfy the plausibility requirement of *Twombly* by promising that they will find factual support for their conclusory assertions during discovery, citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), Opp. at 13, misstates the law and UR's position. *Arista Records* does not change the *Iqbal* and *Twombly* pleading requirement that, regardless of what may be learned through discovery, plaintiffs must plead facts that state a plausible claim. 604 F.3d at 120.

Plaintiffs' reliance on allegations that consist of mere surmise and speculation – such as the contention that they "were told" (by unnamed sources) that the decision to "force [them] out" "came from the top" – reveals the lack of plausibility of their claim. The allegation, bereft of any factual indicia that such a statement was credible or reliable, does not support the wholly conclusory assertion that Seligman or Clark aided and abetted retaliation. *Cf. Zembiec v. County of Monroe*, 766 F. Supp. 2d 484, 495 (W.D.N.Y. 2011), *aff'd* 468 Fed. Appx. 39 (2d Cir. 2012).

Similarly, the wholly unsupported speculation that Seligman and Clark must have been

---

[5] Even assuming *arguendo* that Seligman and Clark individually participated in any conduct that would constitute actionable retaliation, there is considerable doubt about whether one can aid and abet his own act of retaliation. *See Raneri v. McCarey*, 712 F. Supp.2d 271, 282 (S.D.N.Y. 2010).

aware or even authorized email searches does not demonstrate the requisite participation to state an aiding and abetting claim. Opp. at 13. Speculating it is so, without a single factual underpinning to support the conjecture, is not sufficient to establish plausibility and does not entitle plaintiffs to embark on wide-ranging discovery to find the factual support glaringly absent from the Complaint.[6] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Nor, as a matter of law, can plaintiffs convert their assertion that Seligman and/or Clark refused to investigate their complaints of discrimination into a claim for aiding and abetting retaliation. *See Whipple,* 213 F. Supp.3d at 496 (citing *Fahrenkrug v. Verizon Servs. Corp.,* 652 Fed. Appx. 54 (2d Cir. 2016)). Indeed, in *Whipple*, the plaintiff alleged that she had complained of harassment "on multiple occasions, both verbally and in writing," and this Court held such allegations inadequate to survive a motion to dismiss. *Id.* at 496. Nothing plaintiffs argue or cite distinguishes this precedent. Their conclusory allegations simply do not state a plausible claim against Seligman and Clark for aiding and abetting retaliation.

### POINT III
### THEIR PROTESTATIONS TO THE CONTRARY, CANTLON AND KIDD DO NOT STATE HOSTILE WORK ENVIRONMENT CLAIMS

In an effort to save their hostile work environment claims, Cantlon and Kidd claim that they pleaded "numerous facts of Jaeger's creation of a hostile working environment for women at BCS." Opp. at 15 (citing Compl. ¶¶ 74-158 (emphasis deleted)).[7] They do not dispute that Jaeger's conduct took place in 2007-2013, do not appear to deny that the 2007-2013 events fall outside the

---

[6] Nor can plaintiffs convert Seligman's statements after the fact into the requisite factual support for their claim. Opp. at 12. It defies logic to infer from Seligman's expressed skepticism that he participated or otherwise aided and abetted in any purported prior retaliation. Such an inference is not rational and will not "nudge[ ]. . . claims across the line from conceivable to plausible", as *Twombly* requires. 550 U.S. at 570.

[7] Plaintiffs also again improperly and inaccurately reference the White report to support their argument that a hostile work environment existed. *See, e.g., Goel*, 820 F.3d at 558.

statute of limitations[8], and gloss over the fact that UR had no knowledge of the conduct at the time. Instead, plaintiffs contend that Cantlon and Kidd allege sex-based discriminatory events within the statute of limitations and the "continuing violation" doctrine allows the consideration of Jaeger's 2007-2013 conduct on this motion. Opp. at 17 (Cantlon), 18 (Kidd).

As UR established in its original brief, reliance on the continuing violation doctrine to bootstrap Jaeger's conduct into consideration of whether they have stated plausible causes of action for hostile work environment must fail.[9] A hostile work environment claim will be treated as a continuing violation where the claim is "composed of a series of separate acts that collectively constitute one unlawful employment practice." *Taylor v. City of New York*, 207 F. Supp. 3d 293, 309 (S.D.N.Y. 2016) (citation and quotation omitted). However, to permit consideration of any incident preceding the limitations period, it must be "sufficiently related" to the alleged offensive incident within the limitation period. *Id.*

The sporadic conduct of other employees alleged by Cantlon and Kidd to have occurred within the limitations period but years after the untimely alleged harassment by Jaeger, is not sufficiently related, nor is it sufficiently severe and pervasive, to support the application of the continuing violation doctrine here. *See, e.g., Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 544 (E.D.N.Y. 2014) (viable timely allegations of sporadic, discriminatory actions, by different co-workers, could not invoke continuing violation doctrine.); *Chukwueze v. NYCERS (N.Y. City Emples. Ret. Sys.)*, 891 F. Supp. 2d 443, 455 (S.D.N.Y. 2012) (dismissing hostile work environment claim where plaintiff alleged three incidents over one-year period).

---

[8] As noted in UR's original brief, complaints arising from Jaeger's conduct as alleged in paragraphs 74-158 of the Complaint are time-barred. *See* Initial Brief at 17-18.

[9] The continuing violations doctrine is "disfavored and courts are hesitant to apply it absent a showing of compelling circumstances." *Boza-Meade v. Rochester Hous. Auth.*, 170 F. Supp. 3d 535, 545 (W.D.N.Y. 2016). None are established here.

7

Moreover, to plausibly allege a claim for hostile work environment, plaintiffs must allege not only harassment sufficiently severe or pervasive to alter the conditions of their employment (as set forth below and in UR's original brief, they have not), but that there is a specific basis for imputing the conduct creating that environment to the employer. *See Boza-Meade*, 170 F. Supp. 3d at 548 (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996)). The Complaint clearly confirms UR's lack of knowledge of Jaeger's conduct at the time it allegedly occurred.[10] The continuing violation doctrine cannot be applied to hold UR responsible for conduct (or a hostile work environment) about which no complaints were made until after the statute of limitations had run. *Id.* (dismissing claim devoid of allegations that the employer knew or should have known of harassment in pre-limitations time period).

Cantlon alleges three instances of alleged conduct within the limitations period: a December 2016 meeting where DeAngelis allegedly chastised her for her tone; DeAngelis wagging his finger at her four months later; and her exclusion from BCS meetings. As noted in UR's initial brief, these instances do not rise to a gender-based hostile work environment[11] and do not, as a matter of law, describe discriminatory conduct that is "objectively threatening, intimidating, humiliating or harassing, let alone so severe or persuasive, as to render her hostile work environment claims plausible." *Marcus,* 14 F. Supp. 3d 108.

Kidd's arguments that Jaeger's pre-2013 conduct can be considered part of a continuing

---

[10] Plaintiffs affirmatively plead that UR was not on notice of Jaeger's behavior until at the earliest, 2013, when Bixby expressed concerns related to Jaeger's "weird" behavior, not sexual conduct. Aslin did not notify UR of Jaeger's alleged sexually harassing behavior until he learned of it in 2016. Newport claims no knowledge when she was the BCS Director. Compl. ¶ 184.

[11] Plaintiffs' argument that exclusion of Mahon and Piantadosi from those meetings is consistent with a hostile environment for women because they too criticized Jaeger for having created it, Opp. at 16-17, is contrary to both men's claim that the same exclusion constituted discrimination against them (*See* Compl. ¶¶ 418, 426), thus establishing that the conduct was not gender-based or directed solely to a member of a protected class.

hostile work environment fail for the same reasons. In addition, any claim of continuous conduct that could support Kidd's claim is belied by the fact that Kidd left UR after completing her degree, then voluntarily returned to UR in 2014 as an Assistant Professor. Compl. ¶ 59. This fact not only contradicts her claim that work environment was hostile, but precludes the argument that she continuously suffered sufficiently related acts over the entire time period alleged. *See Grimes-Jenkins v. Consol. Edison Co. of N.Y.*, 2017 U.S. Dist. LEXIS 77710, at *34-35 (S.D.N.Y. 2017). The fact that Kidd was a student at the time of the Jaeger conduct also precludes consideration of the conduct, a fact she tries to avoid by positing the preposterous proposition that at the time Jaeger began to create the allegedly hostile environment in 2007-2013, she was "similarly situated to an applicant for employment." Opp. at 18 n.15. In other words, Kidd would have the Court believe that she was an applicant for employment for the 7 years she attended UR (and apparently while she was away from UR as a visiting scientist at other institutions as well). Students are neither employees nor applicants for employment. *See* 42 U.S.C. § 2000e(f) (defining "employee").[12] Even plaintiffs' counsel recognize that students are not employment applicants, as they limited Bixby's claims to Title IX, even though she was a graduate student just like Kidd.

Accordingly, within the statutory period are Kidd's claims that UR labeled her unreliable, thus purportedly characterizing her as woman scorned; and perhaps, that as a faculty member, she had to work in proximity to Jaeger and hear about his continued harassment of women. Opp. at

---

[12] Plaintiffs cite *Morales-Evans v. Admin. Office of the Courts of New Jersey*, 102 F. Supp. 2d 577 (D. N.J. 2000), to justify consideration of conduct while Kidd was a student. Opp. at 18. However, *Morales-Evans* limited consideration of pre-employment conduct to the time period immediately following a job interview, which the court described "cannot be divorced from the application process itself." 102 F. Supp. 2d at 587. This is consistent with the Second Circuit's approach. *See Ahmed v. Astoria Bank*, 690 Fed. Appx. 49, 51 (2d Cir. 2017). Neither *Morales-Evans* nor this Circuit's cases support the strained efforts to expand Kidd's "application process" to include the entirety of her time as a student at UR.

18-19.[13] Even accepting these allegations as true, they do not rise to the level of "discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of the victim's employment." *McCullough*, 942 F. Supp. 2d at 385 (*quoting Harris,* 510 U.S. at 21).

### POINT IV
### THE CONTINUING VIOLATION DOCTRINE AND THE WHITE REPORT CANNOT SALVAGE BIXBY'S TITLE IX HOSTILE EDUCATION ENVIRONMENT CLAIM

As set forth in UR's original brief, while Bixby claims that she perceived the environment at BCS to be hostile, Bixby has not pled sex-based harassment to which she was subjected by Jaeger to objectively support such a claim.[14] *Papelino*, 633 F.3d at 89 (Title IX plaintiff must show he subjectively perceived the environment to be hostile or abusive, *and* that environment objectively was hostile or abusive, i.e., permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter condition of his educational environment) (emphasis added).[15] Implicitly acknowledging this deficiency, she too improperly and inaccurately refers to the White report as a purported source for allegations her pleading lacks. Opp. at 20. With the exception of the November 2015 comment, Bixby's allegations are time barred. *See Irrera v.*

---

[13] The latter claim is completely conclusory, devoid of any detail, including, most significantly, the time period in which it is alleged to have occurred. *See* Compl. ¶ 466.

[14] Bixby claims that she "was immediately put off by Jaeger's boundary-pushing, which included standing close behind her without speaking and taking her photograph after she told him not to"; she observed him speaking to other students and post-docs about sex, citing one incident; that after her lunch talk, Jaeger "took up most of the question period with his own rambling"; and at a BCS dinner in November 2015 she overheard Jaeger state that BCS sexual harassment training was "stupid." Compl. ¶¶ 144, 159, 180.

[15] *Black v. Zaring Homes*, 104 F.3d 822 (6th Cir. 1997), cited by plaintiffs, actually *supports* the conclusion that Bixby was not subject to a hostile work environment. In *Black*, the Court explained that the fact that "most comments were not directed at plaintiff . . . contributes to our conclusion that the conduct here was not severe enough create an objectively hostile environment." 104 F.3d at 826 (quoting *Brown v. Hot, Sexy and Safer Productions, Inc*., 68 F.3d 525, 541 (1st Cir. 1995)). This is consistent with this Circuit's approach. *See Woodard v. TWC Media Sols., Inc.*, 2011 U.S. Dist. LEXIS 1536, at *34-35 (S.D.N.Y. Jan. 3, 2011), *aff'd* 487 Fed. Appx. 613 (2d Cir. 2012).

*Humphreys*, 695 F. Appx. 626, 628 (2d Cir. 2017) (three-year statute of limitations for Title IX claims). For the reasons stated above, the continuing violation doctrine does not apply – none of the conduct on which plaintiff relies is sex-based, severe, or pervasive. Opp. at 20. In addition, this doctrine cannot be applicable when Bixby pleads no allegedly hostile acts from the time of her November 2013 report to DeAngelis until Jaeger's alleged comment in November 2015; a gap of two years between the only incident within the limitations period and any prior incident, undercutting any allegation of a frequent and severe pattern of a sexually hostile educational environment. *See Quinn v. Green Tree Credit Corp.* 159 F.3d 759, 766 (2d Cir. 1998).

Further, although Bixby did not report to DeAngelis incidents of sex-based offensive conduct by Jaeger toward her, DeAngelis commenced an investigation, met twice with Jaeger to address his behavior, and reported his findings to Bixby. *Id.* at ¶¶ 161, 167-68. Notwithstanding Bixby's conclusory statement that DeAngelis was "wrong," Opp. at 21, the facts alleged do not demonstrate deliberate indifference to Bixby's complaints to support a Title IX claim. *See Elgamil v. Syracuse Univ.*, 2000 U.S. Dist. LEXIS 12598, at *24-26 (S.D.N.Y. Aug. 22, 2000).

### POINT V
### ASLIN'S AND HAYDEN'S CONTRACT CLAIMS MUST BE DISMISSED

Aslin and Hayden argue that the Complaint alleges a breach of contractual provisions granting them "permanent tenure." Opp. at 22. But plaintiffs' own pleading reveals that their tenure was never revoked – Aslin and Hayden voluntarily resigned. Compl. ¶¶ 388, 438. Thus, plaintiffs' attempt to distinguish *Keady v. Nike, Inc.*, 116 F. Supp. 2d 428, 438 (S.D.N.Y. 2000), *vacated in part on jurisdictional grounds, not on the merits*, 23 Fed. Appx. 29 (2d Cir. 2001) is unavailing. Even if UR engaged in what plaintiffs' opposition refers to as "six specific breaches" of their "tenure contracts", Opp. at 22, such conduct would not have revoked plaintiffs' tenure. *See* Compl. ¶¶ 387, 437 (alleging UR characterized complaints as "rumors and gossip" or "misinformation,"

disclosed private letters, violated confidentiality, defended Jaeger, allowed his participation in department votes, declined to hire Hayden's wife, made a "derisory offer" to retain Hayden, and had an employee state that he thought the best way to solve the problem was for plaintiffs to leave).

Recognizing that they have not alleged a breach of any contractual provision granting them "permanent tenure," plaintiffs' opposition argues that UR breached the implied covenant of good faith and fair dealing. Opp. at 22. But this allegation is not pleaded in the Complaint, and in any event, it fails because none of the "six specific breaches" would have "prevent[ed either plaintiff] from carrying out the terms of his employment agreement." *See Kader v. Paper Software*, 111 F.3d 337, 342 (2d Cir. 1997). The conduct alleged also does not even remotely approach that of a "constructive discharge," which occurs only when an employer deliberately makes an employee's job so "intolerable" that he has no choice but to resign. *See Leehim v. New York City Dep't of Educ.*, 2017 U.S. Dist. LEXIS 192747, at *14-16 (S.D.N.Y. Nov. 21, 2017) (dismissing constructive discharge claim based on alleged exclusion from "core work," "communication streams," and "meetings," ignored and criticized by supervisors, and "subjected to an angry tirade") (citing *Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir. 1985)). While Aslin and Hayden contend that UR made their working conditions "difficult or unpleasant", Opp. at 23, the conduct they allege does not even rise to the level held non-actionable in *Leehim* and *Martin*.

### POINT VI
### PLAINTIFFS FAIL TO REBUT ANY OF THE MULTIPLE GROUNDS REQUIRING DISMISSAL OF THE DEFAMATION *PER SE* CLAIM

Plaintiffs' efforts to support their defamation *per se* claim directly contradict applicable law. Plaintiffs begin by asking the Court to do precisely what case law prohibits—apply a strained and artificial construction of statements 1, 2, and 4 to inject a defamatory meaning where none actually exists. *See Ulrich v. Moody's Corp.*, 2014 U.S. Dist. LEXIS 145898, at *34-35 (S.D.N.Y.

March 31, 2014). Alleged statements that portions of the complaints against Jaeger were "hearsay" do not, as plaintiffs suggest, accuse them of having "vindictively invented allegations to smear Jaeger." Opp. at 24. Likewise, Jaeger's denial of the accusations against him and statement that an individual had resigned cannot reasonably be construed as a declaration that Aslin "had been caught making false accusations." Opp. at 25. Any objective review of these alleged statements demonstrates that they simply are not defamatory. Also, plaintiffs' silence as to *how* statements 5 and 6 contain a defamatory statement, Opp. at 24-28 concedes that they also are not actionable.

Plaintiffs' attempted rebuttal to defendants' showing that statements 1, 3, and 4 are not "of and concerning" plaintiffs fares no better. Plaintiffs fail to plausibly allege any basis to conclude that the "extrinsic facts" allegedly connecting the statements to any particular plaintiff were "known to those who read or heard the publication." *Chicherchia v. Cleary*, 207 A.D.2d 855, 856 (2d Dep't 1994) (affirming dismissal of defamation claim on the pleadings).

Despite pontificating that UR was "frustrated and angry", Opp. at 26, plaintiffs do not cite a single factual allegation in the Complaint to rebut the "common interest" privilege. To the contrary, plaintiffs' apparent belief the UR community knew all about Jaeger establishes conclusively that the statements made between UR employees about complaints against Jaeger (statements 1, 2 and 3) were a matter of "common interest" within UR. *See Campanella v. County of Monroe*, 853 F. Supp. 2d 364, 371 (W.D.N.Y. 2012). Besides, statements 1 and 2 accurately stated that portions of the claims were based on "hearsay," and plaintiffs' allegation that DeAngelis subsequently apologized for statement 3 cannot plausibly allege that he acted with a reckless disregard for the truth of such statement *as of the time it was made*.

Significantly, plaintiffs' opposition confirms that *none* of the six alleged statements was defamatory *per se*. None of these statements directly attacks any one of the plaintiffs' competence,

13

capacity, or fitness as academics, which would require "a link between a particular profession and a particular disreputable vice of that profession." *Kforce, Inc. v. Alden Personnel, Inc.*, 288 F. Supp. 513, 516 (S.D.N.Y 2003). Plaintiffs spuriously stretch the statements as though they label plaintiffs "liars" who "lacked the necessary honesty to participate in a crucial workplace problem." Opp. at 29. But even that strained characterization would amount to nothing more than a "general reflection upon the plaintiff's character or qualities," which cannot constitute defamation *per se*. *See Liberman v. Gelstein*, 80 N.Y.2d 429, 436 (1992). Just as accusing a property owner of threatening murder is too general to allege conduct incompatible with being a landlord (*see id.*), stating that a professor is dishonest falls well short of alleging conduct incompatible with the specific requirements of working in academia. Honesty is no more or less important for professors than virtually any profession.

Moreover, plaintiffs' argument further demonstrates that none of the statements, on its face, attacks plaintiffs' professional abilities. Lest there be any doubt, plaintiffs' argument that "context matters", Opp. at 28, demonstrates that they improperly seek to rely on extrinsic facts, which automatically precludes a finding of defamation *per se*. *See Tagliaferri v. Szulik*, 2016 U.S. Dist. LEXIS 68732, at *6 (S.D.N.Y. May 25, 2016). Count XIV must be dismissed.

### POINT VII
### DEFENDANTS' MOTION TO STRIKE AND TO REQUIRE PLAINTIFFS TO RE-PLEAD SHOULD BE GRANTED IN ALL RESPECTS

The pleading requirements stated in *Iqbal*/*Twombly* do not, as plaintiffs suggest, grant them a license to flout the Federal Rules of Civil Procedure. Plaintiffs' rambling attempts to connect their allegations regarding consensual sexual relationships of various adults to any matter of relevance in this action serve only to underscore that they are "immaterial, impertinent, or scandalous" and should be struck pursuant to Rule 12(f). *See Anderson v. Davis Polk & Wardwell, LLP*, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012). These allegations were asserted solely to embarrass, and they would needlessly

"widen the scope of discovery" thereby prejudicing defendants. *See M'Baye v. World Boxing Ass'n*, 2007 U.S. Dist. LEXIS 23173, at *10-11 (S.D.N.Y. March 21, 2007).

While it is telling that plaintiffs anticipated that their Complaint would be susceptible to a motion to dismiss "for failing to state any cognizable claims," Opp. at 33-34, that fact does not authorize their selective and unauthorized use of pseudonyms, which make it impossible for defendants to know what plaintiffs are alleging about whom and thus to reasonably answer the Complaint. As noted in defendants' initial brief, Federal Rule 5.2 and Local Rule 5.3 provide the procedure plaintiffs were required to follow to redact certain information from their publicly filed pleading while providing an *unredacted* copy to the Court and defendants. Plaintiffs cannot selectively choose when they will comply with these and other rules.

Finally, plaintiffs offer no serious rebuttal to defendants' showing that the Complaint violates Rules 8(a)(2) and 10(b), which were not displaced by *Iqbal*/*Twombly* and which require pleading via "a short plain statement" with "numbered paragraphs, each limited as far as practicable to a single set of circumstances." To the extent any portion of any claim survives this motion, plaintiffs should be required to replead only such claims in accordance with all of the Federal Rules.

## CONCLUSION

The Court should grant defendants' motion in its entirety.

Dated: April 6, 2018          Respectfully submitted,

                                        WARD GREENBERG HELLER & REIDY LLP
                                            s/ Eric J. Ward
                                        Eric J. Ward (eward@wardgreenberg.com)
                                        Meghan M. DiPasquale (mdipasquale@wardgreenberg.com)
                                        Tony R. Sears (tsears@wardgreenberg.com)
                                        1800 Bausch & Lomb Place
                                        Rochester, New York 14604
                                        (585) 454-0700