UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD ASLIN, KETURAH BIXBY,
JESSICA CANTLON, BENJAMIN HAYDEN,
SARAH HEILBRONNER, CELESTE KIDD,
BRADFORD MAHON, ELISSA NEWPORT
and STEVEN PIANTADOSI,

                          Plaintiffs,

vs.                                                **Civil Case No.: 6:17-cv-06847-LJV**

UNIVERSITY OF ROCHESTER,
JOEL SELIGMAN, and ROBERT CLARK,

                          Defendants.
_____

**DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFFS'
POST-ARGUMENT SUBMISSION AND IN FURTHER SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT, TO STRIKE CERTAIN ALLEGATIONS AND
TO REQUIRE PLAINTIFFS TO RE-PLEAD IN ACCORDANCE WITH RULES 8 AND 10**

**WARD GREENBERG HELLER & REIDY LLP**
1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700

*Attorneys for Defendants*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................iii

PRELIMINARY STATEMENT .............................................................................................. 1

POINT I   PLAINTIFFS FAIL TO IDENTIFY SPECIFIC ACTIONS BY SELIGMAN AND CLARK TO
SUPPORT THEIR AIDING AND ABETTING CLAIMS ....................................... 1

   A.  Allegations Regarding Seligman........................................................................ 2

   B.  Allegations Regarding Clark............................................................................. 5

POINT II  MULTIPLE GROUNDS MANDATE DISMISSAL OF THE DEFAMATION *PER SE* CLAIM ... 7

   A.  Five of the Six Alleged Statements Contain No Defamatory Statement of Fact............ 8

   B.   None of the Six Alleged Statements is Defamatory *Per Se* ......................... 10

POINT III  ASLIN AND HAYDEN FAIL TO STATE A LEGALLY COGNIZABLE CLAIM FOR BREACH
OF CONTRACT ....................................................................................... 12

CONCLUSION ................................................................................................................ 15

### TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 4, 7

*Berman v. Tyco Int'l*, 2011 U.S. Dist. LEXIS 36024 (S.D.N.Y. March 31, 2011) ..................... 15

*Bickerstaff v. Vassar College*, 354 F. Supp. 2d 276 (S.D.N.Y. 2004) .............................. 3

*Bright-Asante v. Saks & Co.*, 242 F. Supp. 3d 229 (S.D.N.Y. 2017) .......................... 15

*Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163 (2d Cir. 2000) ............................ 9

*Chandok v. Klessig*, 632 F.3d 803 (2d Cir. 2011) ...................................................... 11, 12

*Cody v. Cty. of Nassau*, 577 F.Supp. 2d 623 (E.D.N.Y. 2008), *aff'd,* 345 F. Appx. 717
    (2d Cir. 2009) .................................................................................................. 3

*Criscuolo v. Joseph E. Seagram & Sons, Inc.*, 2003 U.S. Dist. LEXIS 18991
    (S.D.N.Y. Oct. 21, 2003) ................................................................................... 15

*Dardashtian v. Gitman*, 2017 U.S. Dist. LEXIS 196271 (S.D.N.Y. Nov. 28, 2017) ..................... 12

*DeWitt v. Lieberman*, 48 F. Supp. 2d. 280 (S.D.N.Y. 1999) ........................................ 1

*ECOR Sols., Inc. v. Malcolm Pirnie,* 2005 U.S. Dist. LEXIS 42993 (N.D.N.Y. 2005) ................... 5

*Egan v. Marsh & McLennan Cos.*, 2008 U.S. Dist. LEXIS 6647 (S.D.N.Y. Jan. 29, 2008) ....... 15

*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712 (2d Cir. 2010) .............................. 3, 6

*Golub v. Enquirer/Star Group, Inc.*, 89 N.Y.2d 1074 (1997) ........................................... 8

*Handares v. TSS-Seedman's Stores, Inc.*, 151 A.D.3d 411 (1st Dep't 1989) ...................... 15

*Hertzoff v. Diaz*, 533 F. Supp. 2d 470 (S.D.N.Y. 2008) ............................................... 15

*Isakov v. HASC Ctr., Inc.*, 2018 U.S. Dist. LEXIS 31624 (E.D.N.Y. 2108) ..................... 7

*Kader v. Paper Software*, 111 F.3d 337 (2d Cir. 1997) .............................................. 13

*Keady v. Nike, Inc.*, 116 F. Supp. 2d 428 (S.D.N.Y. 2000) ......................................... 14

*Kforce, Inc. v. Alden Personnel, Inc.*, 288 F. Supp. 513 (S.D.N.Y 2003) ...................... 11

*Leehim v. New York City Dep't of Educ.*, 2017 U.S. Dist. LEXIS 192747
    (S.D.N.Y. Nov. 21, 2017) .................................................................................. 14

*Liberman v. Gelstein*, 80 N.Y.2d 429 (1992) .............................................................. 11

*Maas v. Cornell Univ.*, 94 N.Y.2d 87 (1999) ............................................................. 13

*Martin v. Citibank, N.A.*, 762 F.2d 212 (2d Cir. 1985) .............................................. 14

*Pena v. Brattleboro Retreat*, 702 F.2d 322 (2d Cir. 1983) ......................................... 13

*Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004) ......................................... 14

*Petrosino v. Bell Atl.*, 385 F.3d 210 (2d Cir. 2004) .................................................... 15

*Popat v. Levy*, 253 F. Supp. 3d 527 (W.D.N.Y 2017) ................................................. 2, 3, 7

*Robinson v. Kingston Hosp.*, 55 A.D.3d 1121 (3d Dep't 2008) .................................... 15

*Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d. 98 (2d Cir. 2011) ..................... 2

*Sales v. Clark*, 2017 U.S. Dist. LEXIS 16631 (S.D.N.Y. Feb. 3, 2017) ...................... 1

*Schaefer v. Brookdale Univ. Hosp. & Med. Ctr.*, 18 Misc. 3d 1142(A)
    (N.Y. Sup. Ct. Kings County Mar. 3, 2008) ....................................................... 15

*Scott v. Harris Interactive, Inc.*, 512 Fed. Appx. 25 (2d Cir. 2013) ............................ 13

*Tagliaferri v. Szulik*, 2016 U.S. Dist. LEXIS 68732 (S.D.N.Y. May 25, 2016) ........................ 10, 11

*Ulrich v. Moody's Corp.*, 2014 U.S. Dist. LEXIS 145898 (S.D.N.Y. March 31, 2014) ............... 8

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015) ............................................. 2

*Whipple v. Reed Eye Assocs.*, 213 F. Supp. 3d 492 (W.D.N.Y 2016) ............................... 2, 3, 4, 6

*Wilson v. New York*, 2018 U.S. Dist. LEXIS 49609 (E.D.N.Y. March 25, 2018) ........................ 10

**Rules**

W.D.N.Y. Local R. Civ. P. 10(a) ................................................................................................. 1

## PRELIMINARY STATEMENT

The Court directed plaintiffs to submit, in no more than 15 pages, "the specifics on exactly what Seligman and Clark did" that could constitute aiding and abetting retaliation; citation to alleged defamatory statements and how such statements are defamatory; and case law regarding whether a constructive discharge can support a claim for breach of contract. Transcript at 39. Despite submitting a 13-page, single-spaced letter,[1] plaintiffs fail to cite any allegations that could sustain either an aiding and abetting or defamation *per se* claim, and the case law they cite confirms that they have not alleged a constructive discharge or stated a claim for breach of contract.

## ARGUMENT

### POINT I
### PLAINTIFFS FAIL TO IDENTIFY SPECIFIC ACTIONS BY SELIGMAN AND CLARK TO SUPPORT THEIR AIDING AND ABETTING CLAIMS

As noted throughout UR's prior memoranda, plaintiffs fail to plausibly allege materially adverse employment actions that could support a retaliation claim.  *See* Def. Mem. Point I at 2-12. Therefore, they necessarily fail to state a claim for aiding and abetting retaliation under the NYSHRL. *See Sales v. Clark*, 2017 U.S. Dist. LEXIS 16631, at \*24 n.5 (S.D.N.Y. Feb. 3, 2017); *DeWitt v. Lieberman*, 48 F. Supp. 2d. 280, 293 (S.D.N.Y. 1999).  But even if there is a valid count for retaliation somewhere in their Complaint, plaintiffs nevertheless fail to state a claim for aiding and abetting retaliation under the NYSHRL (even though given the chance to state in "bullet points or numbers and actions, "exactly what Seligman and Clark did" to aid and abet retaliation (Transcript at 39)) because they do not allege a factual predicate to show that Seligman and Clark actually

---

[1] Plaintiffs' submission violates Local Rule 10(a), which among other things, requires that text in the body of a document submitted for filing be double-spaced. This is but the latest example of plaintiffs' overreaching following their 192-page, 538-paragraph Complaint, which violates multiple Federal Rules of Civil Procedure, and their improper requests that the Court take judicial notice of documents outside the four corners of their Complaint on a motion to dismiss.

participated in conduct giving rise to the retaliation claim. *See Popat v. Levy*, 253 F. Supp. 3d 527, 540 (W.D.N.Y 2017) (quoting *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d. 98, 107 n.10 (2d Cir. 2011)); *Whipple v. Reed Eye Assocs.*, 213 F. Supp. 3d 492 (W.D.N.Y 2016).

In the following review, UR pulls out of the Grygiel letter plaintiffs' conclusory and speculative allegations, and confirms that the aiding and abetting claims must be dismissed.

## A.    Allegations Regarding Seligman

**Complaint ¶ 535(a)**:  Seligman "created an environment where good faith complaints are routinely swept under the rug as described in paragraphs 343-347."
- Seligman and Clark had "intimate relationships with their own subordinates" ¶ 343
- Criticism leveled at Seligman and Clark for "lavish spending" ¶ 344
- Seligman failed to "address the problem created by a popular professor sleeping with one of his students" ¶ 345
- UR's "dogged" defense of a retaliation claim, an Eastman School of Music professor's interaction with the plaintiff in that case, and an award to the professor identified as the harasser in the litigation ¶ 345
- Seligman (and the Board of Trustees) approval of Jaeger's promotion ¶ 208

Allegations regarding the private lives and purported "lavish spending" of Seligman and Clark are irrelevant to an adverse employment action against any plaintiff, any alleged protected activity that purportedly occurred years later, and any claim that Seligman or Clark aided and abetted retaliatory conduct. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 89-90 (2d Cir. 2015). Similarly, neither UR's legitimate defense of litigation involving an Eastman School faculty member nor a vague reference to a rumor of an unnamed professor sleeping with a student in any way support a claim of "active participation" by Seligman in adverse employment actions vis-à-vis plaintiffs.

**Complaint ¶ 535(b)**: "Willfully ignoring the Plaintiffs when they contacted him to convey their concerns about violations of Title VII and Title IX."
- Seligman met with Aslin and Cantlon and promised a statement to BCS to address Jaeger's misconduct and to get back to them about their concerns. Seligman did not make a statement or get back them. ¶ 281
- Seligman told Dr. Runner, Linguistics Department Chair, that Jaeger was fine and complaining students witnessed nothing. ¶ 294
- Seligman responded to a letter from five plaintiffs regarding the investigation, referred to a meeting with BCS faculty to discuss BCS's future, but no meeting occurred. ¶ 300

- Plaintiffs made 29 efforts to seek out UR officials before filing their EEOC complaint, six of which were addressed to Seligman and "none produced any meaningful result." ¶ 347.

Failure to investigate an employee's complaint is not an adverse employment action and cannot constitute retaliation for that same complaint. *Whipple*, 213 F.Supp. 3d at 492; *see Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 722 (2d Cir. 2010). Moreover, neither disbelief of a claim nor inaction is sufficient to demonstrate active participation in retaliatory conduct. *See Popat*, 253 F. Supp. 3d at 540-41. Plaintiffs concede that Seligman responded, just not in a way plaintiffs thought was "meaningful."

**Complaint ¶ 535(c)**:  "Making false statements to at least three department heads that the case against Jaeger was all hearsay and that the Plaintiffs had overreacted."
- "*See also* Cplt. ¶ 295."  This paragraph states that in April 2017, Seligman told Dr. Foxe, Neuroscience Department Chair, that the case against Jaeger was all hearsay and Aslin had overreacted, and Seligman disparaged Aslin and the other Plaintiffs to at least two department heads, Foxe (Neuroscience) and Runner (Linguistics).

At most, Seligman's alleged comments reflect criticism, which is not adverse employment action. *Cody v. Cty. of Nassau*, 577 F. Supp. 2d 623, 645-46 (E.D.N.Y. 2008), *aff'd,* 345 F. Appx. 717 (2d Cir. 2009); *see* Def. Mem. Point II at 4-5.  Seligman's alleged comments to Drs. Foxe and Runner (or to an unidentified "third" department head referenced in ¶ 535(c)) are not actionable retaliation and do not support plaintiffs' claims that Seligman aided and abetted UR's purported retaliation. *See Bickerstaff v. Vassar College*, 354 F. Supp. 2d 276, 280 (S.D.N.Y. 2004).

**Complaint ¶ 535(d)**:  "Publicly comparing the EEOC complaint to a well-known article in *Rolling Stone* which was based on fabricated testimony."

As plaintiffs affirm, "the analysis here is the same as for Paragraph 535(c)." In other words, plaintiffs contend that Seligman's statement reflecting his beliefs about plaintiffs' claims amounts to a materially adverse employment action. As set forth above and in UR's prior memoranda of law, even if these statements could be construed as criticism of plaintiffs, criticism is not an adverse employment action, and thus, cannot constitute the required active participation in prior acts of

retaliation sufficient to support a claim for aiding and abetting. Moreover, counsel's assertion that this statement "generates inferences supporting the aiding and abetting claim" (Grygiel Ltr. at 3) is both belied by the lack of a temporal connection between Seligman's statements and prior alleged conduct as well as contrary to the pleading standard of plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("complaint will not suffice if it tenders naked assertions devoid of further factual enhancement.").

**Complaint ¶ 535(e)**:  "Authorizing or permitting the searching of the Plaintiffs' emails in an effort to undermine their credibility."
- DeAngelis told three professors that "UR administrators" gave him a stack of emails from Plaintiffs' UR email accounts proving they acted inappropriately" ¶ 307
- "Senior officials" decided to trawl through professors' emails stored on the UR server ¶ 308
- Aslin's emails were searched in effort to show Aslin responsible for Jaeger's dis-invitation to a university round table  ¶ 317
- UR email system changed, making it easier for administrators to search emails  ¶ 339
- Seligman statement in September 2017 that he had not been aware of email screening  and that a lawyer in UR's Counsel's office had accessed Plaintiffs' emails and given certain of them to DeAngelis to address leadership challenges in BCS ¶ 341
- Other "victims" experienced email intrusions, and White Investigation apparently searched emails  ¶ 340
- "Long-standing UR employees" familiar with the UR's IT practices find it hard to believe that email searches could have been conducted without Seligman's approval  ¶ 342

The sole factual allegation naming Seligman in this amalgamation of excerpts from the Complaint is the reference to Seligman's September 2017 statement confirming he was not aware of the screening of plaintiffs' emails. The remaining allegations constitute pure speculation regarding unnamed "UR employees", "administrators", and "senior officials." If plaintiffs' unsupported surmise suggests anything, it is that there are no facts to support an inference that Seligman authorized the email searches. In any event, conjecture and surmise are inadequate to support a claim for aiding and abetting retaliation. *Whipple*, 213 F.Supp. 3d at 496; *see* Def. Reply Mem. Point II at 5-6.

**Complaint ¶ 535(f)**:  "Permitting and/or instructing UR administration to encourage Plaintiffs' departure from UR and not to retain them."
- Some Plaintiffs were told that a decision to force out troublesome Plaintiffs came from the

top – meaning Seligman and Clark  ¶ 40[2]
- Foxe, Neuroscience Chair, told Cantlon, Mahon and Hayden that his efforts to retain Aslin in Foxe's department had been shut down by central UR administration ¶ 305
- DeAngelis: "I am dealing with this search the way I have been told to deal with it by my Deans" ¶ 328  (purportedly referencing Heilbronner)
- Foxe told Cantlon and Mahon they should back off complaining because it would help him hire Heilbronner in his department ¶ 329(c)
- Allegations regarding efforts to retain Hayden  ¶¶ 330-31
- Dean Lennie told Mahon and Cantlon that some in UR administration think the best way to solve problem is for Plaintiffs to leave UR  ¶ 333

Plaintiffs' allegations are based on pure speculation about unnamed sources or individuals, without a single reference to Seligman. Claims of direction "from the top", "central UR administration", "my Deans", and "some in UR administration" are by definition vague, and they do not comply with applicable pleading standards. *See ECOR Sols., Inc. v. Malcolm Pirnie,* 2005 U.S. Dist. LEXIS 42993 (N.D.N.Y. 2005) ("While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions."). The allegations actually suggest that the direction did *not* come from Seligman and Clark, but instead came from the "Deans".

## B.    Allegations Regarding Clark

**Complaint ¶ 538(a)**: "Creating an environment where good faith complaints are routinely swept under the rug as described in paragraphs 343-347 . . ."
- Referencing again intimate relationships with subordinates, "lavish spending" and UR's defense of litigation involving an Eastman School professor  ¶¶ 343, 344, 345
- Clark's June 2016 letter endorsing Nearpass Report, including several false statements  ¶ 244
- Dean Taubman rejection of appeal of Clark's endorsement of Nearpass Report.  ¶ 260
- Clark's November 2016 memo supporting UR's exoneration process, saying Jaeger was the target of a "wealth of rumors" and "in some cases misinformation," praising and supporting Jaeger as "valued member of our faculty" ¶¶ 288-90
- Clark memo saying with Jaeger's consent, UR would make summary of Nearpass Report available for review, and providing different materials to different recipients, some including Aslin's private letter to Jaeger without Aslin's knowledge or consent  ¶¶ 291-92
- Cantlon's December 2016 correspondence to Clark expressing disappointment with handling

---

[2] This paragraph cites later paragraphs for "more detail," but the paragraphs cited do not even mention Seligman or Clark. Def. Mem. Point II at 14.

of Jaeger complaints and concern she could not tell students to report harassment to UR administration, to which Clark responded, "I am acknowledging receipt of your letter." ¶ 298

As discussed with respect to plaintiffs' identical claims against Seligman above, plaintiffs'

conclusory and inflammatory allegations regarding the private lives and purported "lavish spending"

of Clark have absolutely no relevance to a claim of retaliation. Nor does UR's defense of an Eastman

School faculty member support a claim of an adverse employment action by Clark against plaintiffs.

The remainder of plaintiffs' allegations express dissatisfaction with UR's investigative process and

Clark's role in it. Failure to investigate an employee's complaint is not an adverse employment action

and cannot constitute retaliation for that same complaint. *See Fincher*, 604 F.3d at 712; *Whipple*, 213

F. Supp. at 492 .

**Complaint ¶ 538(b)**:  "Writing a defamatory and retaliatory letter to the BCS faculty accusing the Plaintiffs of spreading rumors and behaving unprofessionally."
* Clark's November 2016 memo supporting Jaeger and UR's exoneration process, saying that Jaeger was target of a "wealth of rumors" and "in some cases misinformation," praising and supporting Jaeger as "valued member of our faculty"  ¶ 288-90.

Again, plaintiffs' allegations express dissatisfaction with the investigative process, which as

discussed above and in UR's briefs, cannot constitute material adverse action or retaliation.

**Complaint ¶ 538(c)**: "Willfully ignoring the Plaintiffs when they contacted him to convey their concerns about violations of Title VII and Title IX."
* December 2016 Cantlon writes to Clark expressing disappointment with handling of Jaeger complaints and concern she could not tell students to report sexual harassment to UR administration, to which Clark responds: "I am acknowledging receipt of your letter." ¶ 298

This claim reflects nothing more than Cantlon's disappointment with the conclusions of UR's

investigations. As discussed above in response to the same allegation against Seligman, failure to

investigate is not an adverse employment action.  Moreover, by confirming that Clark acknowledged

receipt of her letter, plaintiffs disprove their allegation that they were "willfully" ignored.

**Complaint ¶ 538(d)**: "Permitting and/or instructing UR administrators to encourage Plaintiffs' departure from UR and not to retain them."
* Plaintiffs reference paragraph 535(f) and other allegations throughout the Complaint.

As stated above in relation to the argument with respect to Seligman, these allegations are pure speculation referencing unnamed sources or individuals – not Clark. Claims of direction "from the top", "central UR administration", "my Deans", and "some in UR administration" cannot state a claim sufficient to withstand a motion to dismiss.

In summary, plaintiffs fail to cite even a single specific instance of active participation by either Seligman or Clark to aid and abet UR's purported retaliation. *See Popat,* 253 F. Supp. 3d at 540. A "complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancement." *Isakov v. HASC Ctr., Inc.*, 2018 U.S. Dist. LEXIS 31624 (E.D.N.Y. 2108) (quoting *Ashcroft*, 556 U.S. at 679) ). That is, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions are inadequate…" *Id.* Moreover, the standard of plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Neither legal conclusions nor "[t]hreadbare recitals of the elements of a cause of action" state a claim because" Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* Plaintiffs' aiding and abetting claims must be dismissed.

## POINT II
### MULTIPLE GROUNDS MANDATE DISMISSAL OF THE DEFAMATION *PER SE* CLAIM

In response to the Court's instruction that plaintiffs clarify their muddled allegations of defamation *per se* by telling the Court "exactly what the defamatory statements were, who said them, when they were said, … and perhaps a little exposition on how they're false and defamatory," plaintiffs cite the very six alleged statements that defendants already have demonstrated are not actionable. *See* Def. Mem. Point VI at 25-31; Def. Reply Mem. Point VI at 12-14. Plaintiffs' discussion of the alleged statements further illustrates why they are not

defamatory, much less defamatory *per se*. For these and other reasons, the defamation *per se* count must be dismissed.

## A.      Five of the Six Alleged Statements Contain No Defamatory Statement of Fact

The bulk of plaintiffs' discussion of their purported defamation claims consists of their misguided attempts to inject some defamatory meaning into statements where no such meaning exists. However, the case law makes plain that the statements must be interpreted as an ordinary person would interpret them, and a defamatory meaning cannot be found based upon "a strained or artificial construction." *Golub v. Enquirer/Star Group, Inc.*, 89 N.Y.2d 1074, 1076 (1997). Where, as here, alleged statements cannot reasonably be interpreted to include defamatory statements of fact, no defamation claim is stated. *Ulrich v. Moody's Corp.*, 2014 U.S. Dist. LEXIS 145898, at *34-35 (S.D.N.Y. March 31, 2014) (dismissing defamation claim on the pleadings).

Notwithstanding plaintiffs' counsel's rhetoric and hyperbole,[3] any objective review of Statements 1, 2, 4, 5, and 6 leads to the unavoidable conclusion that these alleged statements simply are not defamatory.[4] Statements 1 and 2 (Compl. ¶¶ 515, 294-95), which relate to Seligman's private statements to individual UR department chairs that the complaints were "hearsay" and that plaintiffs "had overreacted," cannot reasonably be interpreted to constitute attacks on plaintiffs' reputations that would induce an "evil opinion" of them. *See Celle v. Filipino Reporter Enters.*

---

[3] By way of example, the Grygiel letter twists alleged statements that the complaints were based on "hearsay" and that plaintiffs had "overreacted" as though they accused plaintiffs of "vindictively peddling hearsay," being "untruthful," and "trafficking in baseless assertions." *See* Grygiel Ltr. at 6.

[4] Defendants refer to the statements by the numbers assigned in their initial memorandum of law, which tracks the statements in the order they appear in the Complaint. Defendants did not argue, for purposes of the pending motion, that Statement 3 (comments by DeAngelis regarding emails) is not defamatory as a matter of law. *See* Compl. ¶ 518. That statement, however, is not actionable for multiple reasons, including the fact that the statement was not "of and concerning" any particular plaintiff, the common interest privilege applies, and like all of the alleged statements, it is not defamatory *per se*. *See* Def. Mem. at 27-31.

*Inc.*, 209 F.3d 163, 178-79 (2d Cir. 2000). Indeed, plaintiffs acknowledge that their complaints were based on hearsay, with the sole exceptions being limited portions in which Kidd or Bixby communicated alleged personal experiences. *See* Grygiel Ltr. at 5-6. And stating that someone has "overreacted" is pure opinion that cannot constitute defamation. *See Celle*, 209 F.3d at 178-79.[5]

Statement 4, wherein Jaeger allegedly wrote to "the scientific community stating that he had been falsely accused and bullied, and that the person who had complained against him had resigned" is neither defamatory nor "of and concerning" any plaintiff. Compl. ¶ 521.[6] The case law precludes plaintiffs' attempt to manufacture defamation by rewriting this statement as though it made various other assertions, including that "Aslin is an admitted liar." *See* Grygiel Ltr. at 8.

Plaintiffs' attempt to construe Statement 5 (Compl. ¶ 523), including Seligman's alleged denial of the "allegations in the Plaintiff's EEOC Complaints" and likening "the complaint to a well-known article in the *Rolling Stone*," as though Seligman accused plaintiffs of misconduct including having "deliberately lied to a federal agency" is precisely the sort of "strained or artificial construction" that the case law prohibits. *See* Grygiel Ltr. at 6.[7] Just as plaintiffs were permitted to freely (and repeatedly) espouse their views of UR's response to the complaints in the media, so too was the institution allowed to respond and defend itself. Moreover, plaintiffs' own pleading

---

[5] Statement 1 is not actionable for the additional reasons that it was not "of and concerning" any plaintiff, and both Statements 1 and 2 are privileged as communications of "common interest" between a university president and departmental heads. None of the alleged statements is defamatory *per se*. *See* Def. Mem. at 27-31.

[6] Plaintiffs do not even attempt to tie this statement to any plaintiff other than Aslin, highlighting the impropriety of their hodgepodge defamation allegations asserted by seven separate plaintiffs.

[7] As a statement about the allegations of an anticipated litigation, Statement 5 is privileged and nonactionable. *See Baiul v. NBCUniversal Media, LLC*, 2014 U.S. Dist. LEXIS 57474, at *53-54 (S.D.N.Y. April 24, 2014) (party's statement describing claims as "just weird" was privileged).

demonstrates that Seligman's statements were true; because there had been no adjudication when he made the statements, plaintiffs' claims were (and remain) "allegations" and not proven "facts."

Finally, Statement 6, in which a Special Committee of UR Trustees allegedly stated that it had "requested and sincerely hopes that the complainants will reconsider and cooperate with the [independent] investigation" is not defamatory. Compl. ¶ 527. Plaintiffs' request that the Court read into this benign statement various accusations, including that the plaintiffs "feared" an investigation, had "something to hide," "were acting purely self-interestedly," or were "afraid" of the investigation, must be rejected. *See* Grygiel Ltr. at 8-9. The alleged statement is consistent with plaintiffs' allegations – plaintiffs had information vital to the investigation but declined to participate. *See generally* Compl. ¶¶ 49-51. Plaintiffs' attempt to torture the language of the alleged statement as though it constitutes "defamation by omission and mischaracterization" is contrary to the law. *See, e.g., Wilson v. New York*, 2018 U.S. Dist. LEXIS 49609, at *15-17 (E.D.N.Y. March 25, 2018) (dismissing defamation claim for failure to satisfy the "rigorous showing" necessary to claim that an alleged statement "constitutes a false suggestion or reflects a misleading omission").

**B.    None of the Six Alleged Statements is Defamatory *Per Se***

Even if the alleged statements contained a defamatory statement of fact (at least five of the six do not) and even if multiple grounds did not preclude all of the statements from supporting a claim (they do), the count nevertheless fails to state a legally cognizable claim because none of the alleged statements is defamatory *per se*. *See* Def. Mem. Point VI(D), at 29-31; Def. Reply Mem. Point VI at 13-14. Not one of the statements, on its face, directly attacks plaintiffs' professional abilities. *See Tagliaferri v. Szulik*, 2016 U.S. Dist. LEXIS 68732, at *6 (S.D.N.Y. May 25, 2016) ("statements cannot be slanderous per se if reference to extrinsic facts is necessary to give them defamatory import"). None of the alleged statements includes a "direct link" between plaintiffs'

work in academia and "a particular disreputable vice of that profession." *Kforce, Inc. v. Alden Personnel, Inc.*, 288 F. Supp. 513, 516 (S.D.N.Y 2003).

Plaintiffs argue that (a) Statements 1 and 2 attack plaintiffs' "honesty, trustworthiness and integrity," which they contend are "core qualifications of academic life;" (b) Statement 5 accuses plaintiffs of being "dishonest," which they state "is like saying a lawyer helps himself to client trust fund money or that a bus driver is always drunk;" and (c) Statement 6 "calls into question the Plaintiffs' fitness as academics, working in a collegial, collaborative academic research setting … where honesty, integrity, trustworthiness, accuracy and collegiality are key requisites of the job." *See* Grygiel Ltr. at 6, 7, 9.

As previously demonstrated, the alleged statements do not include any such attacks or accusations; rather, plaintiffs impermissibly inject their own very different language. Plaintiffs' reference to extrinsic facts alone precludes a claim of defamation *per se*. *See Tagliaferri*, 2016 U.S. Dist. LEXIS 68732, at *6. Moreover, even assuming that the alleged statements could reasonably be interpreted to include these accusations, such attacks are far too general to constitute defamation *per se*. Just as accusing a landlord of threatening murder is "a more general reflection upon the plaintiff's character or qualities" as opposed to a direct attack on his property management, attacking plaintiffs' honesty, trustworthiness, integrity, collegiality, or accuracy does not constitute an attack on their professional abilities as academics. *See Liberman v. Gelstein*, 80 N.Y.2d 429, 436 (1992).

The case law plaintiffs have cited does not support their position. Plaintiffs vaguely claim that *Chandok v. Klessig*, 632 F.3d 803 (2d Cir. 2011) supports their argument "in spades" (*see* Grygiel Ltr. at 6 n.10), but a review of that decision leads to the opposite conclusion. The *Chandok* decision did not analyze whether the plaintiff had alleged defamation *per se*; rather, the court affirmed dismissal based on the common interest privilege and other defenses. In any event, *Chandok* involved

a research scientist's claim for defamation based on statements "impugning the accuracy and/or veracity of [plaintiff's] reports of the results of her biochemical research." *Chandok*, 632 F.3d at 805-06. While the statements in *Chandock* may be like saying that "a lawyer helps himself to client trust fund money or that a bus driver is always drunk," that analogy is inapposite here.

Plaintiffs' reliance on *Dardashtian v. Gitman*, 2017 U.S. Dist. LEXIS 196271 (S.D.N.Y. Nov. 28, 2017) is equally misplaced. *Dardashtian* addressed statements accusing the principals of companies that facilitated eBay and Amazon store owners' communications with their customers of being in the business of stealing money and operating a "pyramid scheme." *Dardashtian*, 2017 U.S. Dist. LEXIS 196271 at *2, 23. Unlike the allegations before the Court in this case, no reference to extrinsic facts was needed to read the statements in *Dardashtian* as a direct attack on the very essence of the plaintiffs' business. The defamation *per se* count must be dismissed.

POINT III
ASLIN AND HAYDEN FAIL TO STATE A LEGALLY
COGNIZABLE CLAIM FOR BREACH OF CONTRACT

Aslin and Hayden's opposition to the motion to dismiss their breach of contract claims is based on the false premise that they were "constructively discharged" when they voluntarily resigned from UR to accept employment elsewhere. *See* Grygiel Ltr. at 12 ("constructive discharge" is a requisite "element" of the claims). The cases cited in plaintiffs' post-argument submission confirm that (a) alleging a constructive discharge does not relieve Aslin and Hayden of their obligation to plead the essential elements of a claim for breach of contract and (b) in any event, Aslin's and Hayden's allegations are woefully inadequate to plead constructive discharge. The contract claims must be dismissed.[8]

---

[8] Defendants did not argue that a constructive discharge can never breach an employment contract. Rather, defendants demonstrated that *Aslin and Hayden fail to allege a breach of contract* whether based on an alleged constructive discharge or otherwise. Def. Reply Mem. at 11-12.

Plaintiffs devote much of their post-argument submission to a discussion of *Scott v. Harris Interactive, Inc.*, 512 Fed. Appx. 25 (2d Cir. 2013), a case that actually highlights the deficiencies plaguing Aslin's and Hayden's pleading. The plaintiff in *Scott* cited specific provisions in his employment contract and alleged how the defendant employer had breached them – by reducing his salary to an amount $70,000 less than that stated in the contract and by making "adverse changes in his title and responsibilities, again contrary to the [contract]." 512 Fed. Appx. at 28. Recognizing that a "loss of pay or change in title" contrary to an employment agreement can, in limited instances, constitute constructive discharge, the Second Circuit held that questions of fact precluded dismissal of the breach of contract claim. *See Id.* (quoting *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983)).

In stark contrast, Aslin and Hayden cite no contractual provisions other than an ephemeral reference to a right to "permanent tenure," and they affirmatively allege that they voluntarily resigned from UR and that their tenure was never revoked. Compl. ¶¶ 388, 438.[9] Unlike the *Scott* plaintiff, Aslin and Hayden do not allege that UR reduced their salaries, made adverse changes to their titles or responsibilities, or took any other action that violated any provision of a contract. And as the Second Circuit has said, a plaintiff alleging constructive discharge in violation of an employment contract must plead and prove that an employer "deliberately" made the "employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Kader v. Paper Software*, 111 F.3d 337, 339 (2d Cir. 1997) (citing cases).

---

[9] Under New York law, the sole route for plaintiffs to challenge a tenure revocation, had one actually occurred, would have been to commence a proceeding pursuant to CPLR Article 78. *See, e.g., Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92-93 (1999).

Aslin's and Hayden's allegations are parallel to those of the plaintiff in *Keady v. Nike, Inc.*, 116 F. Supp. 2d 428 (S.D.N.Y. 2000)[10] (Grygiel Ltr. at 11). Just like the plaintiff in *Keady*, Aslin and Hayden fail "to allege, in nonconclusory language, the provision(s) of the contract upon which liability is predicated … or the nature of the breach" of any such provisions. *Keady*, 116 F. Supp. 2d at 438. Also like *Keady*, Aslin and Hayden's attempt to manufacture contract claims is based on allegations that their employment became "intolerable" by virtue of alleged actions that do not violate any contractual provision. The same result must be reached here as in *Keady* – the contract claim must be dismissed for failure to state a claim. *See id.*

The balance of cases cited by plaintiffs analyze constructive discharge under the objective standard applied in Title VII cases. In *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141, 147 (2004), the Supreme Court held that constructive discharge requires "something more" than the severe or pervasive conduct necessary to state a hostile work environment claim, including that the plaintiff's "working conditions" became "so intolerable that a reasonable person in the employee's position would have felt compelled to resign."

Aslin and Hayden fail to allege any facts that approach this high standard. *See* Def. Reply at 12 (citing *Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir. 1985); *Leehim v. New York City Dep't of Educ.*, 2017 U.S. Dist. LEXIS 192747, at *14-16 (S.D.N.Y. Nov. 21, 2017)). Indeed, plaintiffs' pleading directly contradicts any claim that a "reasonable person" in Aslin's or Hayden's position would have been forced to resign due to objectively "intolerable" conditions. Plaintiff Celeste Kidd, who alleges the same "retaliation" *and* asserts a hostile work environment claim, did not resign. Compl. ¶¶ 387-88, 410, 437-38, 464-73. Also, plaintiffs allege no facts as to why Aslin's and Hayden's resignations were nine months apart if indeed their working conditions

---

[10] *Vacated in part on jurisdictional grounds, not on the merits*, 23 Fed. Appx. 29 (2d Cir. 2001).

were equally "intolerable." *See Petrosino v. Bell Atl.*, 385 F.3d 210, 230 (2d Cir. 2004) (plaintiff failed to allege what "'ratcheted' the harassment up to 'the breaking point' for a reasonable person" after having experienced similar conditions for a period without resigning).[11] The breach of contract claims (Counts II and IX) must be dismissed.

## CONCLUSION

The Court should grant defendants' motion in its entirety.

Dated: May 16, 2018                 Respectfully submitted,

                                    WARD GREENBERG HELLER & REIDY LLP
                                    s/ Eric J. Ward
                                    _____
                                    Eric J. Ward (eward@wardgreenberg.com)
                                    Meghan M. DiPasquale (mdipasquale@wardgreenberg.com)
                                    Tony R. Sears (tsears@wardgreenberg.com)
                                    1800 Bausch & Lomb Place
                                    Rochester, New York 14604
                                    (585) 454-0700

---

[11] The other New York state and federal cases that plaintiffs cite do not support an argument that they have pled a constructive discharge. *See Bright-Asante v. Saks & Co.*, 242 F. Supp. 3d 229, 243-44 (S.D.N.Y. 2017) (employee pleaded constructive discharge based on "indefinite suspension without pay for approximately ten months … with no indication that he would ever be called back"); *Berman v. Tyco Int'l*, 2011 U.S. Dist. LEXIS 36024, at *18-19 (S.D.N.Y. March 31, 2011) (dismissing constructive discharge claim where plaintiff cited "no evidence to suggest that [he] was subjected to verbal abuse, a risk of physical harm, reduction of status, or other harassment"); *Hertzoff v. Diaz*, 533 F. Supp. 2d 470, 472 (S.D.N.Y. 2008) (plaintiff stated claim for constructive discharge where employer required him to "perform illegal acts"); *Egan v. Marsh & McLennan Cos.*, 2008 U.S. Dist. LEXIS 6647, at *8 (S.D.N.Y. Jan. 29, 2008) (plaintiff stated constructive discharge claim based on allegations "he was told to vacate the premises, to gather his belongings within six hours, and then was denied access to [employer]'s offices, his email account, and his personal files"); *Criscuolo v. Joseph E. Seagram & Sons, Inc.*, 2003 U.S. Dist. LEXIS 18991, at *26-28 (S.D.N.Y. Oct. 21, 2003) (no constructive discharge where plaintiff had "resigned voluntarily to take a new job"); *Robinson v. Kingston Hosp.*, 55 A.D.3d 1121 (3d Dep't 2008) (issues of fact as to constructive discharge where plaintiff's position had been eliminated and she had been offered another position with less pay, benefits, and supervisory duties); *Schaefer v. Brookdale Univ. Hosp. & Med. Ctr.*, 18 Misc. 3d 1142(A) (N.Y. Sup. Ct. Kings County Mar. 3, 2008) (plaintiff's voluntary resignation barred claim for constructive discharge even though defendant was "openly hostile toward him, yelled at him, [and] told him to resign immediately"); *see also Handares v. TSS-Seedman's Stores, Inc.*, 151 A.D.3d 411 (1st Dep't 1989) (cited by plaintiffs even though it makes no mention of constructive discharge).